```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF TEXAS
 2                        MARSHALL DIVISION

 3   BIAX CORPORATION             *    Civil Docket No.
                                  *    2:05-CV-184
 4   VS.                          *    Marshall, Texas
                                  *
 5                                *    December 20, 2005
     INTEL CORPORATION, ET AL     *    3:00 P.M.
 6
                  TRANSCRIPT OF SCHEDULING CONFERENCE
 7             BEFORE THE HONORABLE T. JOHN WARD
                  UNITED STATES DISTRICT JUDGE
 8

 9   APPEARANCES:

10   FOR THE PLAINTIFFS:      MR. ERIC ALBRITTON
                              Attorney at Law
11                            P.O. Box 2649
                              Longview, TX   75606
12                            MR. BARRY GRAHAM
                              Finnegan Henderson
13                            1300 I St., NW
                              Washington, D.C.   20005
14
     FOR THE DEFENDANTS:      MR. GIL GILLAM
15                            Gillam & Smith
                              110 South Bolivar, Suite 204
16                            Marshall, TX   75670
                              MR. HOPKINS GUY
17                            MR. CHRIS OTTENWELLER
                              Orrick Herrington
18                            1000 Marsh Road
                              Menlo Park, CA   94025
19                            MR. ERIC FINDLAY
                              Ramey & Flock
20                            100 East Ferguson, Suite 500
                              Tyler, TX   75702
21
     APPEARANCES CONTINUED ON NEXT PAGE
22
     COURT REPORTER:          SUSAN SIMMONS, CSR
23                            Official Court Reporter
                              100 East Houston, Suite 125
24                            Marshall, TX   75670
                              903/935-3868
25   (Proceeding recorded by mechanical stenography, transcript
     produced on CAT system.)
```




```
1
    APPEARANCES CONTD.
2
                              MS. JENNIFER AINSWORTH
3                             Wilson Firm
                              P.O. Box 7339
4                             Tyler, TX   75711
                              MR. ROBERT DAVID DANIEL
5                             MR. JIM TAYLOR
                              Beck Redden & Secrest
6                             1221 McKinney St., Suite 4500
                              One Houston Center
7                             Houston, TX   77010

8
                  *       *       *       *       *       *
9
                        P R O C E E D I N G S
10

11              THE COURT:  We have a scheduling conference in

12   this case of Biax Vs. Intel, and others.  What says the

13   Plaintiff?

14              MR. ALBRITTON:  Your Honor, Eric Albritton and

15   Barry Graham for Biax, and we're ready to proceed.

16              THE COURT:  All right.  Defendants?

17              MR. GILLAM:  Gil Gillam on behalf of Intel,

18   Your Honor.  I have with me Chris Ottenweller, with the Orrick

19   firm, Hopkins Guy with the Orrick firm, Eric Findlay, the

20   Ramey firm and Janet Craycroft with Intel; we're ready.

21              THE COURT:  All right.  And then we have got --

22   let's see, we have got another Defendant, Analog Devices.

23              MS. AINSWORTH:  Your Honor, Jennifer Ainsworth

24   for Analog Devices, and with me is B.D. Daniel and Jim Taylor

25   from Beck, Redden & Secrest.
```

```
1              THE COURT:  Is that all the parties here is two
2    Defendants?
3              MS. AINSWORTH:  Yes, Your Honor.
4              THE COURT:  All right.  Y'all have had a
5    chance, I guess, to discuss the scheduling schedule I sent to
6    you for deadlines for a trial setting in May.  What changes
7    would y'all like to make to the schedule?
8              MR. ALBRITTON:  Thank you, Your Honor.  Just
9    two matters, one, on the proposed schedule it notes February
10   the 3rd, 2006 as the deadline to comply with Patent Rule 3-3,
11   and we've agreed to move that to February the 17th, 2006.
12             THE COURT:  All right.
13             MR. ALBRITTON:  The only other matter, Your
14   Honor, is on August 17th, 2006, the Court has set the deadline
15   to amend pleadings, in the parenthetical it says -- it
16   actually references May 1, 2006, and we suspect that might
17   just be a typographical error and would ask that that May 1st,
18   2006 be changed to August 17th, 2006 in the parenthetical.
19             THE COURT:  Okay.
20             MR. ALBRITTON:  Those are the only things that
21   relate directly to schedule.
22             There is one related issue, Your Honor, and it
23   relates to the production of documents pursuant to paragraph 3
24   of the proposed discovery order.
25             THE COURT:  All right.  Before we do that,
```

```
 1  let's talk about mediation.  Have y'all talked about who you
 2  want for a mediator or do you want to mediate?
 3              MR. ALBRITTON:  Your Honor, we've talked about
 4  it.  We've not had a chance to agree on one.
 5              THE COURT:  Thirty days from today's date you
 6  will either notify me who you have agreed to or the fact that
 7  you can't agree, but don't request any particular mediator if
 8  you can't agree.  And the deadline will be 30 days after all
 9  of the discovery.
10              Now then, is there any objections or requests
11  to modify the mandatory disclosure provisions that is found in
12  the Eastern District rules or the Court's proposed discovery
13  order?
14              Anything from the Plaintiff?
15              MR. ALBRITTON:  No, Your Honor.
16              THE COURT:  Any of the Defendants?
17              (No response.)
18              THE COURT:  I guess silence means that you have
19  no requests for changes or objections.
20              MR. OTTENWELLER:  Your Honor, I came down with
21  a case of laryngitis.
22              THE COURT:  Okay.
23              MR. OTTENWELLER:  I will move closer so you can
24  hear me.  The Defendant Intel has no requested changes for the
25  mandatory disclosures, but we do have some changes to
```

1  discovery.

2              THE COURT:  All right.  Well, I understand the

3  discovery order, I just was asking about the mandatory

4  disclosure requirements of paragraph 1 and 3 and the mandatory

5  disclosures required under the Patent Rules.  That's all my

6  question went to.

7              MR. OTTENWELLER:  No suggested changes, Your

8  Honor.

9              THE COURT:  All right.  Now, there was a timing

10 on the disclosures under paragraph 3, is that correct?

11             MR. ALBRITTON:  Yes, sir.  And it also, I

12 guess, in theory could impact the disclosures under 3-4 to the

13 extent that there is overlapping.

14             The Defendants have requested a rolling

15 production of documents in this case, and we have agreed and

16 would agree to permit the Defendants 90 days from the date to

17 comply with paragraph 3, that being February the 3rd.  We

18 would agree to a 90-day rolling production beginning on the

19 3rd, and then --

20             THE COURT:  Are you saying that you are going

21 to have production complete by on or about May 1st or

22 something like that?

23             MR. ALBRITTON:  That's correct, Your Honor.

24             MR. OTTENWELLER:  And we think, Your Honor,

25 that we need approximately 120 days which would take us to

1   early June and then the documents would be --

2                   THE COURT:  Well, I misunderstood, I thought it

3   was an -- are you saying an additional 90 -- you are both

4   saying the same thing?

5                   MR. ALBRITTON:  No, we're not saying the same

6   thing.  We are saying, as the Court says, May 1, basically

7   they are saying June 1 to complete the production.

8                   THE COURT:  Oh.  We are talking about a million

9   documents, I will give them until June 1.  Okay.

10                  MR. ALBRITTON:  And then the related issue,

11  privilege log, Your Honor, I believe that we have agreed that

12  the privilege log would be finalized 30 days after that date;

13  so, July the 1st.

14                  THE COURT:  July 1, okay.

15                  MR. ALBRITTON:  We have agreements, Your Honor,

16  as it relates to interrogatories and requests for admissions.

17                  THE COURT:  Well, I was trying to get these

18  dates down that are covered by the -- we are sort of mixing

19  and mingling here, but that's fine, I just want to make sure I

20  have got them down.

21                  So, that's all -- I mean, the privilege log you

22  put to July 1, right?

23                  MR. ALBRITTON:  Yes, Your Honor.

24                  THE COURT:  And we gave the June 1st date to

25  comply with the production of documents either under the rules

1    -- our local rules or paragraph 3, right?

2                    MR. ALBRITTON:  That's correct, Your Honor.

3                    THE COURT:  Okay.  Now then, let's talk about

4    paragraph 4 about the discovery limitations.  So, tell me what

5    you believe you have got there, Mr. Albritton?

6                    MR. ALBRITTON:  Thank you, Your Honor.  I am

7    told that July the 1st is a Saturday, so we would just ask

8    that --

9                    THE COURT:  Well, then it will go to July the

10   -- I tell you what, why don't give you until July the 5th.

11                   MR. ALBRITTON:  That would be great, Your

12   Honor.

13                   THE COURT:  I don't think we are going to be

14   open on July the 4th.

15                   MR. ALBRITTON:  I agree, Your Honor.  At least

16   I hope not.

17                   On interrogatories and requests for admissions,

18   we have an agreement.  That agreement is each side has 60

19   common, then ADI and Intel have each an additional 20 to serve

20   on Biax, and then Biax would have an additional 20 to serve on

21   each Intel and ADI.  And that applies to interrogatories and

22   requests for admissions.

23                   We've also agreed that as it relates to

24   requests for admissions, there would be an unlimited number as

25   to authentication of documents and dates of publications.

```
1                        THE COURT:  Is that the agreement?

2                        MR. OTTENWELLER:  Yes, that's the agreement.

3                        THE COURT:  All right.  Then what about your

4    depositions?  Or tell me about the number of experts you are

5    going to have.

6                        MR. ALBRITTON:  Yes, sir.  Unfortunately, we

7    don't have an agreement on this, Your Honor.

8                        We think that -- there are five patents in the

9    case that all have the same specification, same inventors.  We

10   believe that 90 hours -- I'm sorry, five experts a side would

11   be sufficient, and I believe the Defendants want four experts

12   per party.

13                       THE COURT:  So, one has got 10 and one has got

14   12, is that right?

15                       MR. ALBRITTON:  No, sir, that would be five and

16   eight.

17                       THE COURT:  You said four per party, that would

18   be -- there are three parties to this lawsuit, aren't there?

19                       MR. ALBRITTON:  Yes, sir, I apologize, I was

20   figuring on that side of the table, but in gross numbers, you

21   are right, 10 and 12.

22                       THE COURT:  I mean, what's the big difference

23   here, that's what I'm -- I'm trying to determine why you need

24   -- I don't know why anybody needs that many, but that doesn't

25   surprise anyone in the courtroom, I'm sure.
```

1      MR. OTTENWELLER:  Speaking for Intel, there are

2  two different accused architectures, so we anticipate at this

3  stage having one expert for one of the architectures that will

4  handle the infringement and invalidity issues, one for the

5  different architecture of the different products.  Your Honor,

6  we obviously are going to try to use as few experts as

7  possible.  We anticipate that we are going to try to use just

8  one damages expert even though there are going to be multiple

9  issues, there are economic issues and royalty issues.  And

10  then there is an inequitable conduct issue in the case, and we

11  will need an expert for that.

12      So, at this stage when looking at this, we

13  think that we -- we wanted to advise the Court that we think

14  we will need at least four.  There is no relationship between

15  the Intel-accused products and the Analog Devices products, so

16  there is virtually no area in which there can be a sharing of

17  experts on infringement and damages.

18      MR. DANIEL:  Your Honor, speaking on behalf of

19  Analog Devices, we do not sell chips to computer

20  manufacturers, we sell different types of chips to all sorts

21  of different types of -- it's not -- I mean, it's the same

22  general business, but it's not the same business as Intel.

23  Plus, there is one patent that is accused against our products

24  only.  So, we have to have -- we think we can get by with

25  three, but we need an invalidity and an infringement expert on

1   that one patent, and our own damage expert.  But we think we

2   can get by with three, but they have to be three different

3   from Intel.  There is one expert that --

4                THE COURT:  Well, how many -- how many does the

5   Plaintiff want then?

6                MR. ALBRITTON:  Your Honor, we think that --

7   frankly, we don't even think we need five, but we were willing

8   to agree to five per side.

9                THE COURT:  Well, if you think you don't -- you

10  don't even think you need five and you -- I am not

11  negotiating, I'm trying to make a ruling.

12               I am going to give each party -- the Plaintiff

13  four and each one of the Defendants four.  If you get into the

14  case and you see you really need more, well, then raise the

15  issue with me, I will deal with it then.  But right now, I

16  don't see that.

17               How many hours for depositions?

18               Yes, sir?

19               MR. OTTENWELLER:  That was four for the

20  Plaintiff, four for Intel and four for Analog?

21               THE COURT:  That's correct, that's what I was

22  ruling.  That was the intent, I don't know what I said, but

23  that is what I intended to say.

24               Now then, what have you done about the rest of

25  the discovery?

1          MR. ALBRITTON:  I think that we can agree to a
2   hundred hours per side.
3          THE COURT:  Depositions of who?
4          MR. ALBRITTON:  Non-parties, Your Honor.
5          THE COURT:  Non-parties.  And what are y'all
6   going to do about parties, anything?
7          MR. ALBRITTON:  Just operate under the Court's
8   standard rules, that is 30(b)(6) witnesses.
9          THE COURT:  30(b)(6) witnesses, as long as it
10  is a reasonable number of issues.  I don't usually have any
11  problem with that with lawyers that have been in this Court
12  very much.
13          All right.  Anything else that we need to
14  address?
15          MR. ALBRITTON:  We have a -- we have been
16  negotiating on a protective order, Your Honor.
17          THE COURT:  I was going to ask you about the
18  protective order.
19          MR. ALBRITTON:  And we would request that the
20  Court allow us to continue to negotiate, and no longer -- no
21  later than January the 6th, if we have not reached an
22  agreement, we will submit to the Court what is agreed upon and
23  the points of contention.
24          THE COURT:  Well, your competing versions on
25  the points of contentions.  So, I might like one version, but

```
 1  I might rewrite it, but -- is that the agreement?
 2              MR. OTTENWELLER:  Yes, that is the agreement.
 3              THE COURT:  Okay.  Any other things you have
 4  discussed?
 5              MR. ALBRITTON:  Yes, sir.  We have agreed, Your
 6  Honor, that in lieu of underlying damage documents, that the
 7  Defendants can produce damage summaries to the Plaintiff.
 8              THE COURT:  Damage summaries on sales
 9  summaries?
10              MR. ALBRITTON:  Speadsheets, Your Honor, on
11  sales information.  And we would further agree that they can
12  produce those up and to including June the 1st.
13              THE COURT:  Is that the agreement?
14              MR. OTTENWELLER:  Yes, Your Honor, that's the
15  agreement.
16              THE COURT:  All right.  This is a chip case.  I
17  know there is different chips asserted against different
18  folks, but you -- the Defendants manufacture different chips.
19  Have y'all talked about a technical advisor?  Obviously, the
20  Court needs one.
21              MR. ALBRITTON:  We agree that that would be
22  helpful, Your Honor.
23              THE COURT:  Well, do y'all want to try to agree
24  on one or do you want me just to pick one?
25              MR. OTTENWELLER:  I think we should try to
```

1  agree on one, Your Honor.

2             THE COURT:  And likewise notify me by the

3  middle of January, whatever -- let's see the 17th is on

4  Tuesday as I recall and Monday is a holiday that week.  Notify

5  me who you have agreed upon as a technical advisor or that you

6  can't agree, but again, don't make a request of anybody

7  because I will try to use somebody that I've got confidence

8  in.  But if y'all have got confidence in someone, then the

9  Court will be satisfied.  I mean, I'm not going -- I have

10 never even thought about rejecting the parties' agreement on

11 technical advisors.  But I do need one in this case, and, you

12 know, I would rather get them selected earlier rather than

13 later.  Sometimes we forget to do that and we sort of get in a

14 time crunch.

15            Anything else that we can talk about?

16            MR. ALBRITTON:  Nothing further for the

17 Plaintiffs, Your Honor.

18            MR. OTTENWELLER:  Can I ask for a clarification

19 about the June 1 date on the evidence?

20            THE COURT:  Well, it's July I thought what we

21 said on --

22            MR. ALBRITTON:  June 1.

23            THE COURT:  June 1.

24            MR. OTTENWELLER:  That pertains to the initial

25 disclosures.

1    THE COURT:  Well, you are going to have a

2  rolling disclosure.  As I anticipate, you are going to start

3  producing documents in accordance with the deadline that's in

4  the order, but it's not expected that you are going to

5  complete your full disclosure until that June 1 date.

6    MR. OTTENWELLER:  That's correct.  I just

7  wanted to -- things may come up though, they may ask for

8  additional documents during that period, and there may be

9  documents that are located after the date that need to be

10  produced, and I just wanted to get the clarification that that

11  pertained to the initial disclosure requirement.

12    THE COURT:  Well, the initial disclosure is

13  found in the Federal Rules, but I don't think the initial

14  disclosure is found in the order, is it?

15    MR. OTTENWELLER:  I think it does actually use

16  that phrase.

17    THE COURT:  Does it?  I didn't think it did,

18  but maybe it does.  But anyway, what I want you to do is by

19  June 1st we ought to have the documents about 99-point-nine

20  percent done.  But if the Plaintiff comes up or you come up

21  and saying you haven't produced something, you write a letter,

22  and that should hit the table pretty soon.

23    MR. OTTENWELLER:  Yes, well, that is our

24  intention, that is our goal, of course.  I just wanted to get

25  that clarified.

```
 1                    THE COURT:  I don't think I have had any
 2   problems with Intel.  I have had them sort of -- we had an
 3   initial problem in a case where they had a partner named HP
 4   that didn't believe that they were subject to my disclosure
 5   requirement, but we got that out of the way.
 6                    MR. OTTENWELLER:  We're past that point.
 7                    THE COURT:  Yes, we're past that point.  We
 8   won't need to have those --
 9                    MR. OTTENWELLER:  HP is not a defendant in this
10   case.
11                    THE COURT:  I know, but I'm just saying that
12   Ruffin Cordell is the one that caught that dose.  So, he seems
13   to have survived it well.
14                    MR. OTTENWELLER:  No, we understand the
15   obligations in Your Honor's courtroom.
16                    THE COURT:  All right.  That's good.
17                    Anything else?
18                    MR. ALBRITTON:  Nothing further, Your Honor.
19                    THE COURT:  Happy Holidays to all of you and
20   travel safe, and thank you for being here.
21                    COURT SECURITY OFFICER:  All rise.
22                    (Court adjourned.)
23                *       *       *       *       *
24
25
```

1

2

3                          CERTIFICATION

4

5          I HEREBY CERTIFY that the foregoing is a true and

6   correct transcript from the stenographic notes of the

7   proceedings in the above-entitled matter to the best of my

8   ability.

9

10

11

12   _____        5-9-06
     SUSAN SIMMONS, CSR                 _____
13   Official Court Reporter            Date
     State of Texas No.:  267
14   Expiration Date:  12/31/06

15

16

17

18

19

20

21

22

23

24

25