UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| BIAX CORPORATION, | § | |
|     Plaintiff, | § | |
| v. | § | |
| | § | |
| INTEL CORPORATION and | § | |
| ANALOG DEVICES INC., | § | |
|     Defendants. | § | |
| | § | CASE NO. 2-05 CV-184 (TJW) |
| FREESCALE SEMICONDUCTOR, INC. | § | |
|     Movant, | § | |
| | § | |
| v. | § | |
| | § | |
| INTEL CORPORATION and | § | |
| ANALOG DEVICES INC., | § | |
|     Respondents. | § | |

FREESCALE SEMICONDUCTOR, INC.'S
MOTION TO QUASH SUBPOENA AND, ALTERNATIVELY,
MOTION FOR ADDITIONAL PROTECTION BEYOND
THE COURT'S JANUARY 13, 2006 PROTECTIVE ORDER

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Movant, Freescale Semiconductor, Inc. ("Freescale") and, pursuant to FED.

R. CIV. P. 45(c)(3)(A) and (B), submits this its Motion to Quash Subpoena, and, Alternatively,

Motion for Additional Protection Beyond the Court's January 13, 2006 Protective Order, as follows:

I.
Overview

1.     This Motion seeks to quash a subpoena served upon Freescale via email on May 10,

2006, and via FedEx on May 11, 2006 (the "Subpoena").[1]  A true and correct copy of the Subpoena

is attached hereto as Exhibit "A."  The Subpoena in question is an odd instrument.  It does not seek

to compel attendance of a witness from Freescale at a hearing or deposition, nor does it seek to

---

[1]     Pursuant to agreement between Intel and Freescale, the undersigned accepted service of the Subpoena

AUS:2667400.1
50961.33

compel production of any documents from Freescale.  Instead, the Subpoena says that it "seeks to remove any restriction on ADI[2] and Intel to share [certain documents already in their outside counsel's possession] beyond those restrictions found in the operative Protective Order in [this action].

2.      Additionally, because Freescale is located in Austin, Texas, and is not a party to this proceeding, under Rule 45, a proper subpoena served upon Freescale should have been issued from the United States District Court for the Western District of Texas, Austin Division.  *See* FED. R. CIV. P. 45(b)(2).  For this reason alone, the Subpoena should be quashed.  However, the Subpoena should also be quashed because it is procedurally not a proper means for accomplishing the result Intel and ADI seek (*i.e.*, removing "restrictions" from documents, a number of which are not even in Freescale's possession, custody or control).  Moreover, substantively, the Subpoena should be quashed or Freescale should be protected from the effect of the Subpoena because:  (a) it fails to allow a reasonable time for "compliance"; (b) it subjects Freescale to undue burden and expense; and (c) it requires disclosure of trade secrets and commercial information which, if disclosed without adequate protection, would subject Freescale to a significant competitive disadvantage and damages. Accordingly, pursuant to FED. R. CIV. P. 45(3)(A) and (B), the Subpoena should be quashed. Alternatively, Freescale requests additional protections beyond those set forth in the current Protective Order entered in this case on January 13, 2006 (the "Protective Order").

---

on behalf of Freescale via email on May 10, 2006.  Freescale had no such agreement with Analog Devices, Inc. ("ADI").

2      The undersigned was never asked  nor agreed to accept service on behalf of Freescale with respect to any subpoena proposed to be issued by ADI.  Accordingly, service of the Subpoena by Intel pursuant to its agreement with Freescale should be ineffective as a matter of law as to ADI.

AUS:2667400.1
50961.33

## II.
## Facts

3.      In 2001, BIAX Corporation ("BIAX") sued Motorola, Inc. ("Motorola"), IBM and

Apple Corporation, in the United States District Court for the District of Delaware in the case styled

and numbered *BIAX Corp. v. Motorola, Inc. et al*; 01-601-RRM (the "Delaware Action").

Subsequently, BIAX sued Intel Corporation ("Intel") and "Analog Devices, Inc. ("ADI") in the

instant action.  As noted above, the Protective Order was entered on January 13, 2006.

4.      After the Delaware Action was concluded, BIAX apparently retained certain

pleadings, written discovery requests and responses, briefs, motions papers, including exhibits

thereto, deposition transcripts and exhibits thereto, hearing transcripts, and expert reports from the

Delaware Action (the "Delaware Action Documents").   A Protective Order was entered in the

Delaware Action which kept confidential and competitively sensitive information contained in the

Delaware Action Documents from unfettered disclosure.

5.      Prior to July of 2004, Freescale was a wholly owned subsidiary of Motorola.  In July

of 2004, Motorola sold 20% of Freescale to the public in the form of publicly traded shares.  In

December of 2004, Motorola distributed the remainder of its interest in Freescale to Motorola's

existing shareholders.   That transaction is commonly referred to as the "Freescale Spin-Off."

Freescale is now a publicly traded independent entity.

6.      In the instant suit, Intel and ADI served discovery requests upon BIAX requesting

production of certain of the Delaware Action Documents.  Freescale was not provided a complete set

of the documents retained by BIAX from the Delaware Action.  Freescale was also not provided a

complete set of the documents produced by BIAX to Intel and ADI from the Delaware Action.

BIAX did provide Freescale—in electronic format—a subset of the Delaware Action Documents

that purportedly contains all of Motorola's documents from the Delaware Action and the joint

documents prepared by or on behalf of all of the defendants in the Delaware Action.  In all, BIAX

provided over thirty-five thousand (35,000) pages of documents on two CDs to Freescale.  Because

of the time and expense that would necessarily be incurred by Freescale in reviewing the 35,000

pages of documents, Freescale has been unable to undertake a complete and through review of the

documents it has been provided by BIAX.  Nonetheless, from a cursory review of the documents,

Freescale has reason to believe and does believe that the Delaware Action Documents contain

confidential, trade secret and other proprietary information that Freescale wishes to keep

confidential.  Specifically, Freescale does not want inside personnel of Intel and ADI (including, but

not limited to, Intel and ADI's respective Litigation Managers) to have access to such information—

certainly not on May 25, 2006.

      7.    BIAX has already produced the Delaware Action Documents to outside counsel for

Intel and ADI.  At the time of production to Intel and ADI, BIAX marked any documents that were

marked "Confidential" in the Delaware Action as "Attorney's Eyes Only" in the instant action.[3]  At

the time of production by BIAX, Freescale was informed by outside counsel for ADI that Intel and

ADI would not disclose any of the Delaware Action Documents marked "Attorney's Eyes Only" to

their Litigation Managers or Outside Consultants while Freescale, ADI and Intel attempted to work

out a resolution of any issues relating to the Delaware Action Documents.

      8.    Counsel for Intel, ADI and the undersigned counsel began discussions regarding the

Delaware Action Documents in mid-March 2006.  To date, however, Freescale, Intel and ADI have

been unable to reach an agreement regarding the disclosure of the Delaware Action Documents to

---

[3]     In the Delaware Action, documents marked "Confidential" could only be reviewed by outside counsel and outside consultants (*i.e.*, not by in-house "litigation managers").

Intel and ADI's Litigation Managers[4] and Outside Consultants.  The parties all seem to agree that the Delaware Action Documents, at least for now, shall be treated as "Attorney's Eyes Only" as marked by BIAX and shall be governed by the Protective Order.  The sticking point appears to be that Intel and ADI wish to share what they describe as the "financial information" contained in the Delaware Action Documents with their Litigation Managers and Outside Consultants.  Freescale is not in a position, currently, to agree to such disclosure.

9.      Intel and ADI have stated that they do not wish to share what they term "technical information" with their Litigation Managers and Outside Consultants.  When ADI's outside counsel was asked what was meant by the term "financial," they stated, effectively:  that which is not technical.  Despite repeated requests, Intel and ADI are, to date, unwilling to identify—even by bates number—which of the 35,000 pages of documents they believe are "financial" vs. "technical" so that Freescale could make an informed decision.  Freescale, not a party to this litigation, not having access to all of the Delaware Action Documents, not having had the opportunity to review each of the 35,000 pages of documents potentially at issue, and not knowing which documents Intel and ADI wish to disclose, is unable to agree to Intel and ADI's demands.  Freescale would be willing to undertake and commence a review of the 35,000 pages of documents to determine which specific documents are potentially at issue, so long as ADI and Intel are willing to compensate Freescale for its costs and expenses, including attorneys' fees, incurred in such a review.  However, Freescale submits to the Court that Intel and ADI should first identify by Bates Number which documents they wish to provide to their Litigation Managers.  Even after this identification by Intel and ADI, Freescale should be protected from undue burden and expense in reviewing the documents

---

4       Unless otherwise defined herein, capitalized terms used herein shall have the same meaning as in the Court's January 13, 2006 Protective Order.

AUS:2667400.1
50961.33

identified by ADI and Intel as "financial" to determine if they require additional protection beyond that in the Protective Order.  However, Freescale submits that the Subpoena, is not the proper procedural means for litigating this dispute.  When Intel, ADI and Freescale were not able to reach agreement, Intel served the Subpoena on Freescale.

10.     Intel and ADI have sophisticated and competent counsel in this action.  Thus, Freescale can only assume that what the Subpoena is attempting to do by seeking to "remove restrictions" instead of requiring production is avoid imposing the burden on Freescale of actually producing the Delaware Action Documents in its possession, custody and control, given that the Delaware Action Documents are already in the possession of outside counsel for ADI and Intel.  That would be fine, except that by utilizing the Subpoena to "remove restrictions" instead of requiring production, ADI and Intel are actually sidestepping protections that Freescale would normally have under the FEDERAL RULES OF CIVIL PROCEDURE.  First, Freescale could not normally be required to review and produce over 35,000 pages of competitively sensitive documents in fourteen (14) days.  Second, if required to produce documents pursuant to a valid subpoena, Freescale would obviously be entitled to a subpoena from the United States District Court in Austin, Texas.  Third, Freescale would be entitled to protection from the "undue burden" or "significant expense" associated with compliance with a proper subpoena, including requiring Intel and ADI to pay the reasonable costs and expenses of complying with a subpoena.  By using the Subpoena to "remove restrictions," Intel and ADI seem to want to sidestep these important protections.  According, Freescale must move to quash the Subpoena.  Alternatively, Freescale seeks protection as outlined below.

## III.
## Argument & Authorities/Request for Relief

11.     Freescale hereby moves to quash the Subpoena pursuant to FED. R. CIV. P. 45(c)(3)(A).  A motion to quash a subpoena must be "timely."  FED. R. CIV. P. 45(c)(3)(A).  A motion to quash is timely if it is made at any time before the date specified in the subpoena for compliance.  *See Dexter v. Cosan Chem Corp.,* No. 91-5436, 2000 U.S. Dist. LEXIS 22134, at *9 (D.N.J. Oct 24, 2000); *see also* 9 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 45.04[3][a] (3d ed. 2005).  A subpoena must be quashed or modified by the court if it fails to provide reasonable time for compliance, requires disclosure of privileged or other protected matter and no other exception or waiver applies, or subjects a person to undue burden.  FED. R. CIV. P. 45(c)(3)(A) (i), (iii), (iv).

12.     To determine whether a subpoena presents an undue burden, courts consider the following factors:  "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."  *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004).  When the person to whom the document request is made is a non-party, courts also consider the expense and inconvenience to the non-party.  *Id.*  A subpoena must also be quashed if it is served on a person that is beyond the subpoena power of the court from which the subpoena is issued.  *See Laba v. Lockheed Martin IMS Corp.,* No. 97-926-B, 1998 U.S. Dist. LEXIS 5624, at *2 (E.D. La. 1998).  A subpoena must be served in the district of the court by which it is issued, or at any place outside the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena or at any place within the state where a state statute or rule of court

-7-

permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial production, or inspection specified in the subpoena. FED. R. CIV. P. 45(b)(2). A subpoena that is only for the production or inspection of documents must issue from the court for the district in which the production or inspection is to be made. *Id.*

13.     Rule 45 makes clear that parties subject to a subpoena are to be protected from "undue burden" or "significant expense" resulting from compliance with a subpoena. *See, e.g.,* FED. R. CIV. P. 45(c)(1), (c)(2)(B) and (c)(3)(A)(iv). To enforce this requirement, courts have required the party who issues a subpoena to pay the reasonable costs and expenses of complying with the subpoena. *See, e.g., In re Letters Rogatory,* 144 FRD. 272, 279 (E.D. Pa. 1992); *Broussard v. Lemons*, 186 F.R.D. 396, 398 (W.D. La. 1999). This is because non-party witnesses are "powerless to control the scope of the litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *United States v. Columbia Broadcasting System, Inc.,* 666 F.2d 364, 371 (9th Cir. 1982). The types of costs courts typically award are the attorney's fees in reviewing and selecting the documents to be produced. *See, e.g., In re Lawfirms of McCourts & McGrigor Donald,* No. M. 19-96 (JSM), 2000 U.S. Dist. LEXIS 20287, at *7-*8 (S.D.N.Y. 2000). Employee time and expense may also be appropriate. *Williams v. City of Dallas,* 178 F.R.D. 103, 109 (N.D. Tex. 1998).

14.     Under the factors above as applied to the facts at hand, the Subpoena should clearly be quashed. First, the Subpoena was not properly issued by the United States District Court for the Western District of Texas, Austin Division. This alone requires the Subpoena to be quashed. Next, the Subpoena effectively requires Freescale to review and consent to the use of some 35,000 pages of documents to Intel and ADI on 14 days notice. This is incredible because Intel and ADI expressly do not want to utilize all 35,000 pages of the Delaware Action Documents in this case. Instead, they

-8-

want only the "financial documents" contained therein.  However, Intel and ADI refuse to identify which documents they consider "financial documents."  The relevance of the information requested, the need of a party for the requested documents in the litigation at hand, and the breadth of the document request are factors 1, 2 and 3 identified above.  Without conceding that Freescale's "financial documents" are relevant and necessary in this case, a portion of the 35,000 pages at issue are not "financial documents."  Thus, even if the Subpoena were validly issued, the Subpoena should be quashed under factors 1, 2 and 3 above.  Finally, although Freescale is unable to precisely estimate the costs and expenses to be incurred in-house and through its outside counsel to review and evaluate the 35,000 pages of documents at issue, the time involved, as well as the costs and expenses will be significant.  Therefore, the Subpoena should be quashed on this basis as well.

15.     In the event the Court does not quash the subpoena, in the alternative, Freescale request that the Court modify the subpoena to limit its scope, enter an order providing protection for Freescale's documents, and assure for the compensation of Freescale's necessary expenses[5] in compliance of the Subpoena.  Intel and Analog should be required to limit their request, by identifying which documents they consider "financial documents."  Additionally, Freescale should be given sufficient time to review and consider the "financial documents" to determine whether the Protective Order in place is sufficient with respect to the documents at issue or whether additional protections are warranted.

---

5     Although party witnesses generally bear the burden of discovery costs, this general rule is inapplicable where the discovery demands are made on nonparties. *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998) (status as a nonparty may entitle consideration for reimbursement of discovery expenses); *British Int'l Ins. Co., LTD. v. Seguros  La Republica*, 200 F.R.D. 586 (W.D. Tex. 2000); *In re Letters Rogatory*, 144 F.R.D. 272, 278-79 (E.D. Pa. 1992) (citing Rule 45(c) as support for award of reasonable costs of production for nonparty who moved to quash or modify subpoena, issued pursuant to Letters Rogatory, for production of documents and material); *see also United States v. Columbia Broad. Sys., In*c., 666 F.2d 364, 371-72 (9th Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party.").

16.     Finally, Freescale cannot make an evaluation of the sufficiency of the Protective Order in a vacuum.  Freescale does not currently know the extent of the information contained in the Delaware Action Documents.  The Court acknowledged in paragraph 50 of the Protective Order that other parties, including third parties, may need additional protections beyond those included in the Protective Order.  Freescale is not currently in a position to evaluate whether the Protective Order in place is sufficient.  It may be that Freescale does not object to disclosing the "financial information" contained in the Delaware Action Documents to Intel and ADI's Litigation Manager and Outside Consultants.  However, Freescale cannot make that decision before May 25, 2006.

WHEREFORE, Freescale Semiconductor, Inc. respectfully requests that the court quash the Subpoena, alternatively, modify the Subpoena to protect Freescale from the undue burden and expense of the Subpoena, and grant such other and further relief to which Freescale may show itself to be justly entitled.

Respectfully submitted,

BROWN MCCARROLL, L.L.P.
111 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 472-5456
(512) 226-7324 (fax)

By:                */s/ Kell C. Mercer*
        Kell C. Mercer
        State Bar No. 24007668

ATTORNEY FOR FREESCALE
SEMICONDUCTOR, INC.

-10-

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that Kell C. Mercer has conferred with Alex Chachkes, counsel for Intel, and David Beck, counsel for ADI, but as of the filing of this Motion to Quash, the parties have been unable to resolve all of the issues involved herein, necessitating the filing of this Motion.

*/s/ Kell C. Mercer*

Kell C. Mercer

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via regular U.S. Mail and telecopy, upon the following on this 24th day of May, 2006:

(1)     COUNSEL FOR INTEL CORPORATION:

Alex V. Chachkes                    *Via Telecopy (212) 506-5151*
14505 21st Ave. No., Suite 220
Minneapolis, MN  55447

(2)     COUNSEL FOR ANALOG DEVICES INC.:

David J. Beck                       *Via Telecopy (713) 951-3720*
Robert David  ("B.D.") Daniel
Beck Redden & Secrest
1221 McKinney St., Suite 4500
One Houston Center
Houston, TX 77010-2020

(3)     COUNSEL FOR BIAX CORPORATION:

Eric Miller Albritton               *Via Telecopy (512) 757-8449*
P.O. Box 2649
Longview, TX 75606

*/s/ Kell C. Mercer*

Kell C. Mercer

-11-