**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| BIAX CORPORATION, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. <u>2-05CV-184 (TJW)</u> |
| v | ) | |
| | ) | |
| INTEL CORPORATION | ) | **JURY** |
| | ) | |
| and | ) | |
| | ) | |
| ANALOG DEVICES, INC., | ) | |
| | ) | |
| Defendants/Counterclaimants. | ) | |

**INTEL'S OPPOSITION TO BIAX'S MOTION TO AMEND ITS PRELIMINARY**
**INFRINGEMENT CONTENTIONS PURSUANT TO PATENT RULE 3-7**

Intel Corporation ("Intel") opposes the MOTION TO AMEND ITS PRELIMINARY INFRINGEMENT CONTENTIONS PURSUANT TO PATENT RULE 3-7 ("Motion to Amend") filed by BIAX Corporation ("BIAX"). BIAX has not shown good cause under Patent Rule 3-7 to make substantive amendments to its Preliminary Infringement Contentions, including the addition of two entirely new claims.

**I.     SUMMARY OF ARGUMENT**

The Court's Patent Local Rules require that a party's Preliminary Infringement Contentions ("PICs") should be carefully prepared and should be considered its final contentions, with limited exceptions. Under Patent Rule 3-7, BIAX must show "good cause" to amend its PICs. BIAX has not satisfied that "good cause" requirement.

BIAX seeks to add two entirely new patent claims to the case, both directed against the Intel® Itanium® 2 "Montecito" processor. BIAX argues that its review of Intel's source code and technical documentation have led it to conclude that Montecito includes "multi-threading," a

feature BIAX seeks to accuse under the two new claims. But it has been publicly known for more than two years that Montecito would support multi-threading. Moreover, multi-threading is not a new concept to BIAX; BIAX has already accused the multi-threading feature in other Intel products. There is no reason BIAX could not have asserted the two new claims it now seeks to add at this late date when it filed and served its PICs on January 3, 2006.

In addition to seeking to add two new claims, BIAX also seeks to amend its PICs to make what it refers to as "minor" changes to its contentions. Altogether BIAX seeks to make over 250 amendments, the vast majority of which are substantive and material, not "minor," and which reflect an attempt by BIAX to change its theory of the case. The broad scope and nature of these proposed changes are inconsistent with the policy reflected in the Patent Local Rules that a party should be prepared to state its infringement contentions with certainty when it files its Preliminary Infringement Contentions. BIAX has not made any showing that it was incapable of making the contentions it now seeks to add when it served its PICs on January 3, 2006.

BIAX suggests there is a general rule that a party can amend its PICs after reviewing documents produced pursuant to P.R. 3-4. BIAX references P.R. 3-6, asserting that that Rule allows amendments to infringement contentions after a claim construction order "if the patentee believes in good faith that documents produced according to P.R. 3-4 so requires." BIAX Br. at 4. But P.R. 3-6 was amended in February 2006 to delete the very phrase BIAX relies upon. There is no general rule that a party can amend its PICs after reviewing documents produced pursuant to P.R. 3-4.

Allowing BIAX to add new claims and make voluminous changes to its infringement theories would run counter to the principle of certainty and finality reflected in the Court's Patent Rules. It also would threaten the schedule of the case and cause prejudice to Intel. The

amendments would expand the scope of this litigation after the Court has issued its Scheduling Order and fixed a discovery schedule with cutoff dates. Amendment at this late stage would require Intel to revisit its non-infringement positions and its Preliminary Invalidity Contentions at a time when the parties should be focusing on claim construction issues. The amendments may also require a change in the case schedule to allow additional time for the service of new invalidity contentions.

## II.   STATEMENT OF FACTS

### A.   It Was Well Known Before BIAX Filed Suit That Intel® Itanium® 2 Montecito Would Support Multi-Threading.

BIAX filed its Complaint in this action on May 13, 2005. The Complaint expressly identifies the Intel® Itanium® 2 as an accused product under all four causes of action. BIAX did not serve and file its PICs until January 3, 2006, eight months after the action was initiated. BIAX had ample opportunity – both before and after the filing of the Complaint – to conduct its investigation before filing its PICs, especially in light of the fact that this is at least the third action BIAX has filed on the patents in suit. Even though the Montecito version of the Intel® Itanium® 2 will be commercially released shortly, information regarding its features and technology has been available in the public domain for years.

As early as November 17, 2003, Intel announced that Montecito would support multi-threading. Declaration of Lisa Ward ("Ward Decl.")[1] Ex. A, at 1 ("Itanium's first multicore processor, codenamed Montecito, will also have multithreading when it is released in 2005 . . .").

---

[1] Unless otherwise indicated, all exhibits are attached to the Ward Decl. and will be referred to as Ex. A to Ex. R herein. Cites to exhibits from BIAX's motion will be referred to as "BIAX Br. Ex. __" herein.

In September and October of 2004, the trade press published numerous articles discussing the multi-threading feature of Montecito. Ex. B, at 1 ("[moving the Intel® Itanium® 2 generations from] Madison to Montecito is an architectural change again with dual core and multi-threading . . ."); Ex. C, at 3 ("Each [Montecito] CPU also incorporates coarse grained multithreading (CMT) . . . "). In July of 2005, Intel issued two of its own press releases disclosing that Montecito would support "Hyper-Threading," the marketing term Intel uses to refer to multi-threading. Ex. D, at 2 ("Montecito will also have Intel Hyper-Threading technology, enabling four times the threads as the current generation."); Ex. E, at 2 (same). Thus, even a modicum of investigation would have disclosed to BIAX a year and one-half before BIAX served its PICs that Montecito would support multi-threading.

BIAX was familiar with Intel's multi-threading technology (referred to by Intel as Hyper-Threading) well before it filed its PICs on January 3, 2006.[2] BIAX's complaint expressly accuses "Hyper-Threading Products" of infringement. *See, e.g.,* 2d. Am. Compl. ¶ 13 ("Intel processors supporting Hyper-Threading Technology . . . are covered by one or more claims of the '755 Patent."). Additionally, BIAX's PICs make repeated references to Hyper-Threading. BIAX Br. Ex. D (Part 3 of 3), at 1 ("Hyper-Threading Technology makes a single physical processor appear as two logical processors." ); *Id.* at 1 ("Figure 3 shows a multiprocessor system with two physical processors that are Hyper-Threading Technology-capable.")

Beginning in January 2006, Intel produced even more documents about the multi-threading feature of Montecito. On January 23, 2006, as part of its production of documents

---

[2] Hyper-Threading is a term coined by Intel to refer to the multi-threading technology in its processors. See, e.g., Ex. F, at 1 ("Intel last month confirmed it will put multithreading, which it calls hyperthreading, into a future version of its 64-bit Itanium line of chips. The Santa Clara, Calif., company will have dual-core processing in an Itanium chip code-named Montecito and due in 2005."); *Id.* Ex. G, at 1 ("The Montecito processor Hyper-Threading Technology implementation duplicates and shares resources to create two logical processors.").

under P.R. 3-4, Intel produced to BIAX a detailed technical specification discussing the multi-threading feature of Montecito. Ex. H. On February 21, 2006, Intel completed its production of the Montecito source code. Ex. I. It was not until two and one-half months later, on May 2, 2006, that BIAX first informed Intel by letter that it would seek leave to amend its PICs to add claim 35 of the '945 patent and claim 24 of the '628 patent against the Montecito version of the Intel® Itanium® 2. BIAX wrote: "The addition of these two claims results from the presence of a new feature in the Montecito version of the Itanium 2 processor that Intel refers to as 'multi-threading'." Ex. J, at 1. Claims 35 and 24 were not asserted in BIAX's PICs.

### B.    BIAX Seeks To Make Numerous Substantive Amendments To Its PICs.

In addition to asserting two new claims, BIAX also seeks to make hundreds of changes and amendments to its PICs. BIAX's motion characterizes these changes as "minor;" but the vast majority of them are substantive and material changes that significantly affect BIAX's theories of infringement. Attached as Appendix A is a listing of the numerous substantive changes BIAX seeks to make. Leave to make these changes to the PICs should be denied.

## III.    ARGUMENT

### A.    BIAX Failed to Comply with P.R. 3-1(h).

#### 1.    P.R. 3-1(h) Harmonizes Defendant's Need For Early Disclosure Of Plaintiff's Infringement Theories With Plaintiff's Lack Of Access To Defendant's Computer Code.

BIAX's Motion to Amend repeatedly seeks to justify the proposed amendments by asserting that they are needed in light of BIAX's review of Intel's source code. *See, e.g.,* BIAX Br. at 3. Yet BIAX, by its own admission, made no attempt to comply with P.R. 3-1(h), which was adopted to specifically address a situation like this. P.R. 3-1(h) provides a patentee with a

mechanism for delaying its PIC allegations for software limitations until 30 days after the defendant produces its code. It provides:

> P.R. 3-1(h): If a party claiming patent infringement asserts that a claim element is a software limitation, the party need not comply with P.R. 3-1 for those claim elements until 30 days after source code for each Accused Instrumentality is produced by the opposing party. Thereafter, the party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements.

P.R. 3-1(h) is directed to the situation in which a plaintiff claims that it cannot specify its infringement contentions until it has had an opportunity to review the defendant's source code. According to the Court's Order implementing the amendment to P.R. 3-1(h), it is intended to strike a balance between the fact that "parties claiming patent infringement typically do not have access to an opposing party's source code before filing suit" and the fact that "parties opposing a claim for patent infringement are hampered in their ability to prepare a defense absent specific infringement contentions from the party asserting claims of patent infringement." Order Relating to Patent Cases Before Judge T. John Ward, § II. To invoke P.R. 3-1(h) a patentee must (1) assert in its PICs that a claim limitation is a software limitation and (2) provide its infringement contentions "30 days after source code for each Accused Instrumentality is produced by the opposing party." P.R. 3-1(h).

### 2.   BIAX Failed To Comply With The 30-day Deadline of P.R. 3-1(h).

BIAX claims that its PIC amendments are based on its "review of Intel's source code," and that this additional information "necessitated changes to BIAX's PICs." BIAX Br. at 3, 6. But if BIAX had lacked sufficient knowledge of the details of how the Montecito processor implemented multi-threading or how the other Intel accused products functioned, BIAX should

have stated this in its original PICs, pursuant to P.R. 3-1(h).  BIAX, however, did not invoke P.R. 3-1(h).

Even after BIAX reviewed Intel's source code, and presumably came to the conclusion that it revealed previously unknown information, BIAX ignored the 30-day deadline.  As noted above, BIAX received the Montecito source code on February 21, 2006.  Ex. I.  BIAX did not express its intent to amend its PICs until May 2, 2006, more than 70 days after it received the Montecito source code – and also more than 99 days after it received Montecito technical documentation that also disclosed the multi-threading feature.  Ex. J.

BIAX should not be allowed to end-run the requirements of P.R. 3-1(h).  P.R. 3-1(h) contemplates that a plaintiff may need to review source code in order to finalize its preliminary infringement contentions.  The Rule, however, requires diligent action based on this review.  A plaintiff must finalize its preliminary infringement contentions within 30 days of having the defendant's code so that the defendant can prepare its defenses.  BIAX wants the benefit of the source code review, and the ability to amend its infringement contentions in light of the source code review, but seeks to circumvent the responsibility of complying with the Court's deadline. If parties can amend their PICs based on source code review on their own schedule, and claim entitlement to do so under P.R. 3-7, the new P.R. 3-1(h) would have little effect.

**B.     BIAX Has Not Shown Good Cause To Amend Under P.R. 3-7.**

Even if BIAX's proposed amendments to its PICs were analyzed under the "good cause" standard of P.R. 3-7, the record shows that BIAX has not established good cause.  To the contrary, BIAX's proposed amendments at this late date reflect a lack of diligence.

A party seeking to show "good cause" under P.R. 3-7 must show that it could not reasonably make its PIC deadlines "despite the diligence of the party needing the extension."

*STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 851 (E.D. Tex. 2004).

Amendments based on new information "may" be permissible if "*despite all possible diligence*"

the new information "was not available when the Disclosures were originally due." *Id.* at 852

(emphasis added). But this Court has emphasized the obligation of a patent owner to rigorously

analyze public information before filing suit. "Plaintiffs are expected to rigorously analyze all

publicly available information before bringing suit." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F.

Supp. 2d 526, 528 (E.D. Tex. 2005). Because of the central importance of the plaintiff's pre-

filing investigation to the rapid and orderly progress of patent litigation, the Patent Rules require

the plaintiff's Preliminary Infringement Contentions to be final, unless one of the limited

exceptions in P.R. 3-6 or 3-7 apply. *See* Order Relating to Patent Cases Before Judge T. John

Ward, § I (noting problems with parties "attempt[ing] to avoid the rule that Preliminary

Contentions are final except as provided in P.R. 3-6 and P.R. 3-7").[3]

BIAX has not shown that it did not have available to it information relating to the

amendments it seeks to make before it served its PICs. Had BIAX exercised "*all possible

diligence*" it would have found that the information that it cites as support for its amendments

was "available when the Disclosures were originally due." *STMicroelectronics*, 307 F. Supp. at

852 (emphasis added).

### 1.    BIAX Should Have Known That The Montecito Processor Supported Multi-Threading Long Before It Even Filed Suit.

BIAX contends that it could not have accused the multi-threading feature of the

Montecito processor of infringement in its original PICs served on January 3, 2006, because this

---

[3] As discussed in further detail below, P.R. 3-6 is inapplicable, because that rule does not permit
the addition of new claims, and no longer contains the provision BIAX cites to, which used to
allow amendments when "the documents produced pursuant to P.R. 3-4 so requires." *See* BIAX
Br. at 3; Ex. K, General Order 06-6 (February 27, 2006.)

feature "is not described in any publicly available documents." BIAX Br. at 3. Information about the Montecito processor, however, including the fact that the Montecito processor supported multi-threading, was publicly available well before BIAX served its original PICs. As shown above, the fact that Montecito would contain multi-threading was public as early as November 17, 2003, was publicized multiple times in 2004, and was disclosed in written Intel press releases in July, 2005. If BIAX had exercised "*all possible diligence*" it would have learned about this feature long before it served its PICs. Moreover, BIAX was very familiar with Intel's multi-threading technology, enough so that it specifically addresses it in the PICs in connection with other products (Intel refers to multi-threading as Hyper-Threading). Hyper-Threading (i.e., multi-threading) was not a new technology to BIAX.

Even after it received Intel's technical documentation and source code, BIAX delayed in seeking leave to amend its PICs to add the new claims. Given the tight schedule of this case, the magnitude of the amendments it seeks to make, and the fact that document exchange was scheduled to be completed in early June, it was not reasonable for BIAX to wait more than 100 days after receiving the technical documentation and source code to even raise the issue of a possible amendment to the PICs. That type of delay simply is not consistent with the Court's "good cause" requirement.

### 2.    BIAX's Other Proposed Amendments Are Untimely Substantive Changes in Their Infringement Theories.

BIAX asserts that its "revisions to its Original PICs" for the '755 and '945 patents are merely "minor" revisions "to reflect BIAX's review of Intel's source code and other P.R. 3-4(a) production." BIAX Br. at 3, 5. The majority of the proposed amendments, however, are substantive changes to BIAX's infringement theories. *See* Appendix A. Indeed, BIAX is seeking to make numerous substantive changes to the "identity of the structure(s) . . . in the

Accused Instrumentality that performs the claimed function" (P.R. 3-1(c)) that BIAX was required to provide *in final form* under the Patent Rules. *See* 3-6.

For example, BIAX originally claimed that "functional units" in the Intel® Itanium® 2 correspond to the "processor elements" recited in various of the BIAX claims. *See, e.g.,* BIAX Br. Ex. D (Part 1 of 3), BIAX's PICs for the '755 patent (Itanium), Redlined Version, at 14; BIAX Br. Ex. D (Part 2 of 3), BIAX's PICs for the '945 patent (Itanium), Redlined Version, at 11, 23-25. BIAX now seeks to change the scope of the claimed processor elements to include both the "functional units" and the associated "issue ports." *See, e.g.,* BIAX Br. Ex. D (Part 1 of 3) at 14; BIAX Br. Ex. D (Part 2 of 3) at 11, 23-25. BIAX also changed many of its theories of infringement by adding contentions that cover the Intel® Itanium® 2 assembler where the original PICs only have references to the Intel® Itanium® 2 compiler. *See, e.g.,* BIAX Br. Ex. D (Part 1 of 3), at 1; BIAX Br. Ex. D (Part 2 of 3), at 4. With respect to the PICs asserted against Intel's Hyper-Threading products, BIAX again seeks to change its theories of infringement so that the claimed "processor elements" correspond to both the "execution units" and the associated "ports," instead of corresponding to just the "execution units" as recited in BIAX's original PICs. *See, e.g.,* BIAX Br. Ex. D (Part 3 of 3), BIAX's PICs for the '755 patent (Hyper-Threading), Redlined Version, at 3-4.

BIAX also seeks to make numerous other substantial changes to its contentions about the Hyper-Threading products. For example, BIAX seeks to replace the following contention:

> The logical resource driver includes the register rename logic and Register Alias Tables (RATs). The register rename logic dynamically adds information during program execution to simple instructions and complex instructions decoded into uops. The information identifies the user context file for each thread.

with the following new contention:

> Each thread also has its own Register Alias Table to track the latest
> version of each architectural register.

*See* BIAX Br. Ex. D (Part 3 of 3) at 2.

BIAX also seeks to change their contentions by deleting the following text:

> The logical resource drivers also dynamically add thread information to
> simple instructions and complex instructions decoded into uops. The
> thread information includes a logical processor ID and identifies the user
> context file for the thread. See, e.g., id. at p.6 ("The TC entries are tagged
> with thread information and are dynamically allocated as needed."; id.
> ("[t]he large global history array is a shared structure with entries that are
> tagged with a logical processor ID."); see also id. at p.5 ("Near the TC is
> the Microcode ROM, which stores decoded instructions for the longer and
> more complex IA-32 instructions."); id. at p.6 ("When a complex
> instruction is encountered, the TC sends a microcode instruction pointer to
> the Microcode ROM. The Microcode ROM controller then fetches the
> uops needed and returns control to the TC.")

*Id.* at 3.

The features to which BIAX refers in its amendments, however, were disclosed in
publicly available documents well before BIAX served its PICs. For example, from as early as
2001 Intel's architecture included execution/functional units as well as issue ports. *See, e.g.,* Ex.
L, *The Microarchitecture of the Pentium 4 Processor,* Intel Technology Journal Vol. 5, Issue 1,
February, 2001, at 7-8 (Fig. 6 depicts "dispatch ports" connected to the "execution units" of the
Pentium® processor); Ex. M, *Intel® Itanium® 2 Processor Reference Manual for Software
Development and Optimization,* at 26-28 (2004) (Section 3.3 discusses how "[e]ach fetched
instruction is assigned to a function unit through an issue port.") Furthermore, the features of the
Intel® Itanium® assembler were known to the public from as early as 2001. *See, e.g.,* Ex. N,
*Intel® Itanium™ Architecture Assembly Language Reference Guide,* at 31-33 (2001) (explaining
how the Intel® Itanium® assembler automatically bundles instructions, including specification
of instruction unit types and stops). If BIAX had discharged its duty to exercise "*all possible
diligence*" regarding the allegedly-infringing products, it would have learned long before it

served its PICs that Intel's architecture included execution/functional units as well as issue ports, and that the Intel® Itanium® included an assembler as well as a compiler.   The other amendments supposedly necessitated by Intel's source code and P.R. 3-4(a) documents were likewise available to BIAX before it served its PICs.

### 3.   BIAX's Motion Is Inconsistent With The Rationale Of The Court's Patent Local Rules, Including P.R. 3-6.

BIAX argues that the "philosophy set forth in P.R. 3-6" allows it to revise its PICs so long as it has a good faith belief that the "documents [Intel] provided under P.R. 3-4" require the revisions.   BIAX Br. at 3-4.   BIAX asserts that "P.R. 3-6 allows a patentee to serve final infringement contentions that amend its PICs *without leave of the Court* if the patentee 'believes in good faith that documents produced pursuant to P.R. 3-4 so requires,' not later than 30 days after service by the Court of its Claim Construction Ruling."   *Id.*

BIAX has not accurately quoted P.R. 3-6.   P.R. 3-6 was amended nearly three months prior to the filing of this motion, by striking the very provision that BIAX invokes in support of its argument.   *See* Ex. K, General Order 06-6 (February 27, 2006).   In fact, the amended Rule defeats BIAX's argument.   As explained by Chief Judge Heartfield, P.R. 3-6 was amended to prevent plaintiffs from making untimely amendments to their PICs "when the amendment is based on disclosures received months before."   *Id.*   The cases BIAX cites to in support of its incorrect reading of P.R. 3-6 all pre-date the amendment of this rule.

Additionally, P.R. 3-6 does not provide for amendments to add new patent claims.   P.R. 3-1(a) required BIAX to identify in its original PICs "each claim of each patent in suit that is allegedly infringed by each opposing party."   While P.R. 3-6 governs amendments to information provided under P.R. 3-1(c) and (d), it never once mentions P.R. 3-1(a).

There is no "philosophy set forth in P.R. 3-6" or any of the other Patent Local Rules that would allow BIAX to amend its PICs to make the amendments it now seeks to make. The Patent Local Rules encourage "a party asserting claims of patent infringement to take a firm position in the litigation as it relates to infringement early on in the case." Order Relating to Patent Cases Before Judge T. John Ward, § II. BIAX had ample opportunity to investigate and ample information on which to base its PICs. A party can always claim that it has learned information from a defendant's P.R. 3-4 disclosure. But simply learning more about defendant's products is not the standard for amending Preliminary Infringement Contentions.

### C.   The Proposed Amendments Will Prejudice Intel.

BIAX's proposed amendments will prejudice Intel's defense of this action. The Court has already established its Scheduling Order for this case, which sets forth a detailed schedule of deadlines leading up to a trial date of May 7, 2007. *See* Ex. O, Docket Control Order of December 21, 2005. The discovery schedule has been fixed, the number of experts on each side has been decided, and the document production deadline for Intel (June 1, 2006) has already passed. Intel has already researched, prepared and served its Preliminary Invalidity Contentions on BIAX, and is now focusing on claim construction and preparation for the upcoming Markman hearing.

The PIC amendments proposed by BIAX would force Intel to re-visit its invalidity contentions, both because of the two entirely new patent claims that BIAX seeks to assert, and because of any additional or modified invalidity positions required by BIAX's substantial changes in their infringement theories. Intel will also be forced to re-analyze its non-infringement positions in light of these new infringement theories. BIAX's untimely PIC amendments cannot be allowed to prejudice Intel's preparations for claim construction submissions and the Markman hearing. *See STMicroelectronics, Inc.*, 307 F. Supp. 2d at 851

(finding that prejudice to the defendant's claim construction preparations weighed against permitting plaintiff to make a belated amendment to their PICs).

These amendments also threaten to upset the schedule of the case. If these amendments are permitted, Intel will have to submit revised Preliminary Invalidity Contentions covering the newly asserted claims and any modifications to Intel's invalidity theories predicated on BIAX's changes in infringement theories. This could cause the claim construction schedule, including the *Markman* hearing, to be pushed back.

## IV.   CONCLUSION

BIAX failed to demonstrate good cause for its proposed amendments to add two new patent claims and make numerous substantial changes to its infringement theories in its PICs. Accordingly, Intel respectfully requests that the Court deny BIAX's Motion to Amend Its Preliminary Infringement Contentions Pursuant to Patent Rule 3-7.

Dated: June 8, 2006.                     Respectfully submitted,

By: /s/ Eric H. Findlay
Harry Lee Gillam, Jr. , *Attorney in Charge*
GILLAM & SMITH, LLP
110 S. Bolivar, Suite 204
Marshall, TX 75670
Telephone: 903/934-8450
Facsimile: 903/934-9257
E-mail: gil@gillamsmithlaw.com

Eric H. Findlay
State Bar No. 00789886
RAMEY & FLOCK, P. C.
100 E. Ferguson, Suite 500
Tyler, Texas 75702
Telephone: 903/597-3301
Facsimile: 903/597-2413
E-mail: efindlay@rameyflock.com

**OF COUNSEL**:

Chris R. Ottenweller
G. Hopkins Guy III
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
Tel. (650) 614-7400

Lisa C. Ward
Orrick, Herrington & Sutcliffe LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2558
Tel. (949) 567-6700

Alex V. Chachkes
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103
Tel. (212) 506-5000

*Attorneys for Intel Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 8th day of June, 2006, a true and correct copy of the foregoing instrument was served upon all parties via electronic mail.

/s/ Eric H. Findlay
ERIC H. FINDLAY