## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| BIAX CORPORATION, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. <u>2-05CV-184 (TJW)</u> |
| v | ) | |
| | ) | |
| INTEL CORPORATION, | ) | **JURY** |
| | ) | |
| Defendant. | ) | |

## <u>DEFENDANT INTEL CORPORATION'S FIRST AMENDED ANSWER AND</u>
## <u>COUNTERCLAIMS TO SECOND AMENDED COMPLAINT</u>

Defendant Intel Corporation ("Intel") answers the Second Amended Complaint of

plaintiff BIAX Corporation ("BIAX") as follows:

### <u>THE PARTIES</u>

1.      Intel is without knowledge or information sufficient to form a belief as to the

allegations of Paragraph 1, and so denies them.

2.      Intel admits the allegations of Paragraph 2.

3.      Intel admits that it manufactures microprocessors and sells and offers to sell the

same in the United States.  Except as expressly admitted, Intel denies that it manufactures

microprocessors or sells or offers to sell them in this district.  Intel further asserts that this case

would be more conveniently adjudicated in the Northern District of California where Intel

resides.

4.      Intel is without knowledge or information sufficient to form a belief as to the truth

of the allegations of Paragraph 4, and so denies them.

5.    Intel is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 5, and so denies them.

## JURISDICTION AND VENUE

6.    Intel admits that the Second Amended Complaint alleges an action for patent infringement arising under the Patent Laws of the United States.  Except as expressly admitted, Intel denies the allegations of Paragraph 6.

7.    Intel admits the allegations of Paragraph 7.

8.    Intel admits, for the purposes of this litigation only, the allegations of Paragraph 8.

9.    Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9, and so denies them.

10.    Intel admits, for the purposes of this litigation only and as to itself only, the allegation that venue is proper under 28 U.S.C.    1400(b).  Except as expressly admitted, Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10, and so denies them.

## COUNT ONE

11.    Intel incorporates its answers to Paragraphs 1-10 as if fully set forth herein.

12.    Intel admits that, on its face, U.S. Patent No. 4,847,755 (the "'755 patent"), entitled "Parallel Processing Method And Apparatus For Increasing Processing Throughput By Parallel Processing Low Level Instructions Having Natural Concurrencies," indicates that it was issued by the United States Patent and Trademark Office ("PTO") on July 11, 1989.  Intel admits that, on its face, the '755 patent lists Gordon E. Morrison, Christopher B. Brooks, and Frederick G. Gluck as the inventors.  Intel denies that the '755 patent was duly or legally issued.  Except as

US_WEST:260068465.3
5545-90 USH/USH

expressly admitted, Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12, and so denies them.

13. Intel denies each and every allegation of Paragraph 13 and specifically denies any wrongdoing, infringement, inducement of infringement, or contribution to infringement.

14. Intel denies the allegations of Paragraph 14.

15. Intel denies the allegations of Paragraph 15.

16. Intel denies the allegations of Paragraph 16.

17. Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17, and so denies them.

18. Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18, and so denies them.

19. Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19, and so denies them.

## COUNT TWO

20. Intel incorporates its answers to Paragraphs 1-10 as if fully set forth herein.

21. Intel admits that, on its face, U.S. Patent No. 5,021,945 (the "'945 patent"), entitled "Parallel Processor System For Processing Natural Concurrencies And Method Therefor," indicates that it was issued by the PTO on June 4, 1991. Intel admits that, on its face, the '945 patent lists Gordon E. Morrison, Christopher B. Brooks, and Frederick G. Gluck as the inventors. Intel denies that the '945 patent was duly or legally issued. Except as expressly admitted, Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21, and so denies them.

US_WEST:260068465.3
5545-90 USH/USH

22.   Intel denies each and every allegation of Paragraph 22 and specifically denies any wrongdoing, infringement, inducement of infringement, or contribution to infringement.

23.   Intel denies the allegations of Paragraph 23.

24.   Intel denies the allegations of Paragraph 24.

25.   Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25, and so denies them.

26.   Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26, and so denies them.

27.   Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27, and so denies them.

## COUNT THREE

28.   Intel incorporates its answers to Paragraphs 1-3, 6-8, and 10 as if fully set forth herein.

29.   Intel admits that, on its face, U.S. Patent No. 5,517,628 (the "'628 patent"), entitled "Computer with Instructions that Use an Address Field to Select Among Multiple Condition Code Registers," indicates that it was issued by the PTO on May 14, 1996.  Intel admits that, on its face, the '628 patent lists Gordon E. Morrison, Christopher B. Brooks, and Frederick G. Gluck as the inventors.  Intel denies that the '628 patent was duly or legally issued.  Except as expressly admitted, Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29, and so denies them.

30.   Intel denies each and every allegation of Paragraph 30 and specifically denies any wrongdoing, infringement, inducement of infringement, or contribution to infringement.

31.   Intel denies the allegations of Paragraph 31.

US_WEST:260068465.3
5545-90 USH/USH

32.     Intel denies the allegations of Paragraph 32.

33.     Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33, and so denies them.

34.     Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34, and so denies them.

35.     Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35, and so denies them.

## COUNT FOUR

36.     Intel incorporates its answers to Paragraphs 1-3, 6-8, and 10 as if fully set forth herein.

37.     Intel admits that, on its face, U.S. Patent No. 6,253,313 (the "'313 patent"), entitled "Parallel Processor System for Processing Natural Concurrencies and Method Therefor," indicates that it was issued by the PTO on June 26, 2001.  Intel admits that, on its face, the '313 patent lists Gordon E. Morrison, Christopher B. Brooks, and Frederick G. Gluck as the inventors. Intel denies that the '313 patent was duly or legally issued.  Except as expressly admitted, Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37, and so denies them.

38.     Intel denies each and every allegation of Paragraph 38 and specifically denies any wrongdoing, infringement, inducement of infringement, or contribution to infringement.

39.     Intel denies the allegations of Paragraph 39.

40.     Intel denies the allegations of Paragraph 40.

41.     Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 41, and so denies them.

US_WEST:260068465.3
5545-90 USH/USH

42.   Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 42, and so denies them.

43.   Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43, and so denies them.

## <u>COUNT FIVE</u>

44.   Intel incorporates its answers to Paragraphs 1, 4-7, and 9-10 as if fully set forth herein.

45.   Intel admits that, on its face, U.S. Patent No. 5,765,037 (the "'037 patent"), entitled "System for Executing Instructions with Delayed Firing Times," indicates that it was issued by the PTO on June 9, 1998.  Intel admits that, on its face, the '037 patent lists Gordon Edward Morrison, Christopher Bancroft Brooks, and Frederick George Gluck as the inventors.  Except as expressly admitted, Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 45, and so denies them.

46.   Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 46, and so denies them.

47.   Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47, and so denies them.

48.   Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48, and so denies them.

## <u>AFFIRMATIVE DEFENSES</u>

Intel asserts the following affirmative and other defenses and reserves the right to amend its Answer as additional information becomes available.

US_WEST:260068465.3
5545-90 USH/USH

## First Defense: Non-Infringement

Intel has not infringed and does not infringe, directly, contributorily, or by inducement, any claim of the patents in suit, either literally or under the doctrine of equivalents, nor willfully or otherwise.

## Second Defense: Invalidity

The patents-in-suit are invalid for failure to meet one or more of the conditions of patentability specified in 35 U.S.C. §§ 101 *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, 112, 132, and/or under the doctrine of obviousness-type double patenting.

## Third Defense: Prosecution History Estoppel

BIAX is precluded under the doctrine of prosecution history estoppel from asserting any construction of any of the claims of the patents-in-suit to cover any product manufactured, sold, or offered for sale by Intel.

## Fourth Defense: Laches, Waiver, and Estoppel

The patents-in-suit are unenforceable under the doctrine of laches, waiver, and estoppel.

## Fifth Defense: Prosecution Laches

The patens-in-suit are unenforceable under the doctrine of prosecution laches.

## Sixth Defense: Inequitable Conduct

Some or all of the patents-in-suit are unenforceable because BIAX acted inequitably in prosecuting them before the United States Patent and Trademark Office ("PTO").  The acts, omissions, and misrepresentations constituting inequitable conduct included BIAX's failure to disclose material prior art and material information in connection with the prosecution of U.S. Patent Application Serial No. 08/480,691 (the "'691 application"), which issued into the '313 patent, in violation of the applicant's duty to prosecute patent applications in the PTO with

7

candor, good faith, and honesty.  37 C.F.R.   1.56.  Upon information and belief, such failure of

disclosure was done with an intent to deceive or mislead the PTO.

On June 8, 1995, the GATT Uruguay Round Agreements Act ("URAA") became

effective, limiting patents issuing from all applications filed on that date and thereafter to no

longer than 20-year terms calculated from the filing date of the earliest-filed application from

which such patents take priority.  On June 7, 1995, the day before the URAA became effective,

BIAX filed multiple divisional applications of then-pending U.S. Patent Application Serial No.

08/254,687, including the '691 application, without immediately proposing any new claims for

examination.

The filing of the '691 application before the URAA effective date allowed BIAX to

reserve a patent application benefiting from a pre-URAA filing date for years before BIAX even

knew what proposed claims it wanted to prosecute in it.  Indeed, it was not until two years later,

on or about May 27, 1997, that BIAX first submitted new proposed claims for examination in the

'691 application.  BIAX's newly proposed claims of the '691 application were numbered 74-98.

The patent examiner subjected proposed claims 74-98 to a restriction requirement and

deemed them non-elected.  In response to that action, BIAX filed another application, as a

divisional of the '691 application, in order to circumvent the restriction requirement.  This was

U.S. Patent Application Serial No. 08/914,077 (the "'077 application").  The claims proposed in

the '077 application (also numbered 74-98) were identical to the corresponding claims in the

'691 application.

Patent Examiner William Treat rejected Claims 74-98 of the '077 Application as

unpatentable.  Among other things, he found that they were unpatentable over prior art including

(1) U.S. Patent No. 4,742,453, entitled "Pipeline-Controlled Information Processing System for

US_WEST:260068465.3
5545-90 USH/USH

Generating Updated Condition Code," issued to Shibuya ("Shibuya"); (2) H. Schorr, *"Design Principles for a High-Performance System,"* Proc. of the Symposium on Computers and Automata, New York, NY, April 13-15, 1971, Polytechnic Press of the Polytechnic Institute of Brooklyn, NY ("Schorr"); and (3) P. Kogge, *"The Architecture of Pipelined Computers,"* Hemisphere Publishing Corp., 1981 ("Kogge").  Despite repeated efforts by the applicant to convince Examiner Treat that proposed Claims 74-98 were patentable, Examiner Treat made his rejection final on May 5, 1999, concluding that the "[a]pplicant's [latest] arguments . . . have been fully considered but they are not persuasive."  BIAX was therefore fully aware of the Shibuya and Kogge references and their materiality.

On or about September 17, 1999, BIAX succeeded in overturning the restriction requirement on the proposed claims 74-98 of the '691 application.  At this point in time, the PTO assigned a different patent examiner, Examiner Meng-Ai An, to examine all of the claims proposed in the '691 application on their merits, including claims 74-98.  BIAX failed to disclose to Examiner An that proposed claims 74-98 of the '691 application were identical to proposed claims 74-98 of the '077 application which Examiner Treat rejected as unpatentable.  Examiner An was not aware of the rejection by Examiner Treat of the claims in the '077 application and, upon information and belief, BIAX intentionally failed to disclose that information to her.  To remove Examiner Treat from the picture, BIAX abandoned the '077 application, effectively terminating Examiner Treat's involvement.

Not only did BIAX fail to tell Examiner An that the claims had been rejected as unpatentable in a co-pending application, but BIAX compounded the omission by failing to disclose to Examiner An the Shibuya and Kogge references which Examiner Treat had relied upon.  Upon information and belief, BIAX failed to disclose the history of the '077 application

9

and prior art in order to deceive or mislead the PTO.  BIAX's lead patent attorney was the attorney of record for both the '077 and '691 applications and had full knowledge of Examiner Treat's rejection of the claims.

BIAX failed to disclose additional prior art to Examiner An in connection with the prosecution of the '313 patent.  Upon information and belief, during the prosecution of the '691 application, BIAX was aware of the existence of two IBM Technical Disclosure Bulletins authored by T.K.M. Agerwala.  These Bulletins were entitled *"New Condition Code and Branch Architecture for High Performance Processors"* and *"Improved Condition Code and Branch Handling for Model 91-Like Implementation of the IBM System/370 Architecture,"* dated June 1982 (collectively, "Agerwala").  The Agerwala references anticipate and/or render obvious the claims of the patents in suit.  BIAX did not disclose these material prior art references to either Examiner An or Examiner Treat.

A reasonable patent examiner would have considered the prosecution history of the '077 application, particularly Examiner Treat's rejections, material to the patentability of the claims in the '313 patent.  A reasonable patent examiner also would have considered the undisclosed prior art material to the patentability of the claims in the '313 patent.  The undisclosed prior art was not cumulative of any other prior art of record in the prosecution of the '691 application.  Upon information and belief, BIAX failed to disclose the aforementioned information to the examiner of the '691 application with an intent to deceive or mislead the examiner, in direct contravention of the rules of the PTO and BIAX's duty to prosecute patent applications with candor, good faith, and honesty.

Furthermore, some or all of the patents-in-suit are unenforceable due to BIAX's inequitable conduct in affirmatively misrepresenting and/or failing to disclose the addition of

US_WEST:260068465.3
5545-90 USH/USH

new matter during the prosecution of U.S. Patent Application Serial No. 06/794,221 (the "'221 application"), which issued into the '755 patent.  Upon information and belief, such affirmative misrepresentations and/or failures of disclosure were made with an intent to deceive or mislead the PTO.

During the prosecution of the original patent application of the patents-in-suit, BIAX amended the original disclosure through the transmittal of a substitute specification ("Substitute Specification").  BIAX transmitted the Substitute Specification to the PTO on or about June 13, 1988, over two-and-a-half years after the original filing of the '221 application, but before receiving a notice of allowance. The transmittal of the Substitution Specification coincided with the hiring of new lead patent prosecution attorney, Gary A. Walpert.  BIAX stated that the Substitute Specification was made to correct typographical errors and delete a description of the prior art which was otherwise of record.  BIAX further stated that "certain obvious errors, which are clear from a reading and understanding of the application as filed, have been corrected to avoid the necessity of a later reader having to perform the same ordinary corrective functions and to provide thereby a clearer and more accurate description of the invention."  BIAX stated that "[n]o new matter has been added."

In response to an office action dated September 22, 1988, Mr. Walpert filed a declaration under 37 C.F.R. §1.125  attesting that "no new matter has been added to the application by the filing of or in the substitute specification."  He also asserted that the "changes, as noted in my previously filed paper, relate to the deletion of the section on prior art, the correction of a large number of typographical errors, as well as some inconsistencies which were apparent to me upon a normal reading of the application."  On or about February 2, 1989, the PTO issued a notice of allowability and the notice of allowance of the claims of the '755 patent.

Contrary to BIAX's representations, the Substitute Specification added new matter to the '221 application. For example, the adjective "identical" was systematically removed from the term "identical processor elements" or the term "identical processor elements" was modified by the addition of phraseology suggesting it was merely a description of a particular embodiment. BIAX's representations that the Substitute Specification did not add new matter and was made merely to correct typographical errors were false and intentionally misleading. The '755, '945, '628, and '313 patents all issued on the improper Substitute Specification.

Additionally, in prosecuting U.S. Patent Application Serial No. 07/372,247 (the "'247 application"), which issued into the '945 patent, BIAX changed the drawing in Figure 21 without telling the PTO it was doing so. The '247 application, a divisional application of the '221 application, was filed on June 26, 1989 shortly after BIAX received the notice of allowance of the '755 patent. In filing the '247 application, BIAX represented to the PTO that it was based on the '221 application without change. That was not true. BIAX changed Figure 21 by adding lines 2180 and 2182. These changes added new matter to the original parent application. BIAX's representations to the contrary were false and misleading. BIAX also submitted the amended drawing Figure 21 in connection with the prosecution of the '313 patent, making similar misrepresentations. Upon information and belief, these misrepresentations were made with an intent to deceive or mislead the PTO.

BIAX also failed to disclose material prior art in connection with the prosecution of the '037 patent. Upon information and belief, during prosecution of U.S. Patent Application Serial No. 08/480,841 (the "'841 application"), which issued into the '037 patent, BIAX was aware of the existence of an article written by Honesty C. Young and James R. Goodman and published in October 1984, entitled "A Simulation Study of Architectural Data Queues and Prepare-to-Branch

Instruction. ("Young and Goodman").  Upon information and belief, the Young and Goodman reference anticipates and/or renders obvious the claims of the '037 patent in suit.  BIAX did not disclose this material prior art reference during prosecution of the '841 application.

The Young and Goodman reference is not cumulative of any other prior art of record in the prosecution of the '841 application.  Upon information and belief, Mr. Walpert knew that he was under a duty to disclose the Young and Goodman reference to the examiner to allow the examiner to determine patentability of the allowed claims in view of the Young and Goodman reference and the other art of record.  Upon information and belief, BIAX failed to disclose the aforementioned information to the examiner of the '841 application with an intent to deceive or mislead the examiner.

BIAX's conduct in connection with the prosecution of the '755, '945, '628, '037 and '313 patents establishes a pattern of conduct in failing to disclose material information  relevant to the patent applications, with an intent to deceive or mislead the PTO, in direct contravention of the rules of the PTO and BIAX's duty to prosecute patent applications with candor, good faith, and honesty.

### Seventh Defense: Failure to Mark/Limitation on Damages

Prior to receiving a copy of the complaint in this action, Intel had neither actual nor constructive notice of the patents-in-suit.  Upon information and belief, neither BIAX nor BIAX's licensees mark devices that embody any of the purported claims of the patents-in-suit with proper notice of such patents, as required by 35 U.S.C. § 287, such that BIAX is not entitled to any pre-filing damages pursuant to that provision.  BIAX is barred under 35 U.S.C. § 287 from recovering any damages for any alleged infringement of the patents in suit that occurred prior to the filing of the Complaint.

US_WEST:260068465.3
5545-90 USH/USH

## Eighth Defense: Unclean Hands

BIAX is barred under the doctrine of unclean hands from obtaining any relief or recovery against Intel.

## JURY DEMAND

Intel requests a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, defendant Intel prays for relief as follows:

A.  That the Court enter judgment in favor of Intel, and against plaintiff BIAX;

B.  That the Court find the patents-in-suit not infringed by Intel;

C.  That the Court find the patents-in-suit invalid;

D.  That the Court find the patents-in-suit unenforceable;

E.  That BIAX take nothing by its Second Amended Complaint against Intel;

F.  That the Court deny any and all of plaintiff BIAX's requests for injunctive relief;

G.  That the Court deny any and all of plaintiff BIAX's requests for equitable relief;

H.  That the Court dismiss BIAX's Second Amended Complaint in its entirety, with prejudice;

I.  That the Court find this case exceptional under 35 U.S.C. § 285, and award Intel its costs and fees in this action, including reasonable attorneys' fees and pre-judgment interest thereon; and,

J.  That the Court grant Intel such other and further relief as it deems just and proper.

US_WEST:260068465.3
5545-90 USH/USH

## COUNTERCLAIMS

For its counterclaims against BIAX, Intel alleges as follows:

1.      Intel incorporates what is set out in the preceding paragraphs as if fully set forth herein.

2.      The Complaint and Second Amended Complaint have established an actual and justiciable controversy between Intel and BIAX with respect to the validity, enforceability, and infringement, or lack thereof, of U.S. Patent No. 4,847,755 (the "'755 patent"), U.S. Patent No. 5,021,945 (the "'945 patent"), U.S. Patent No. 5,517,628 (the "'628 patent"), and U.S. Patent No. 6,253,313 (the "'313 patent") (collectively, the "patents-in-suit").

3.      Jurisdiction over the subject matter of the controversy, personal jurisdiction over BIAX, and venue are co-extensive with the Second Amended Complaint.

## COUNT ONE

### (Declaratory Judgment of Non-Infringement of the Patents-in-Suit)

4.      Intel incorporates Paragraphs 1-3 of these Counterclaims as is fully set forth herein.

5.      Intel has not infringed and does not infringe, directly or indirectly, willfully or otherwise, any valid claim or claims of the patents-in-suit.  Additionally, BIAX is precluded under the doctrine of prosecution history estoppel from asserting any construction of any of the claims of the patents-in-suit to cover any product manufactured, sold, or offered for sale by Intel.

## COUNT TWO

### (Declaratory Judgment of Invalidity of the Patents-in-Suit)

6.      Intel incorporates Paragraphs 1-3 of these Counterclaims as is fully set forth herein.

15

7.     The patents-in-suit are invalid for failure to meet one or more of the conditions of patentability specified in 35 U.S.C. §§ 101 *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, 112, 132, and/or under the doctrine of obviousness-type double patenting.

### COUNT THREE

### (Declaratory Judgment of Unenforceability of the Patents-in-Suit)

8.     Intel incorporates Paragraphs 1-3 of these Counterclaims as is fully set forth herein.

9.     The patents-in-suit are unenforceable under the doctrine of laches, waiver, estoppel, and prosecution laches.

10.     Additionally, some or all of the patents-in-suit are unenforceable because BIAX acted inequitably in prosecuting them before the United States Patent and Trademark Office ("PTO").  The acts, omissions, and misrepresentations constituting inequitable conduct included BIAX's failure to disclose material prior art and material information in connection with the prosecution of U.S. Patent Application Serial No. 08/480,691 (the "'691 application"), which issued into the '313 patent, in violation of the applicant's duty to prosecute patent applications in the PTO with candor, good faith, and honesty.  37 C.F.R.   1.56.  Upon information and belief, such failure of disclosure was done with an intent to deceive or mislead the PTO.

11.     On June 8, 1995, the GATT Uruguay Round Agreements Act ("URAA") became effective, limiting patents issuing from all applications filed on that date and thereafter to no longer than 20-year terms calculated from the filing date of the earliest-filed application from which such patents take priority.  On June 7, 1995, the day before the URAA became effective, BIAX filed multiple divisional applications of then-pending U.S. Patent Application Serial No.

16

08/254,687, including the '691 application, without immediately proposing any new claims for examination.

12.     The filing of the '691 application before the URAA effective date allowed BIAX to reserve a patent application benefiting from a pre-URAA filing date for years before BIAX even knew what proposed claims it wanted to prosecute in it. Indeed, it was not until two years later, on or about May 27, 1997, that BIAX first submitted new proposed claims for examination in the '691 application. BIAX's newly proposed claims of the '691 application were numbered 74-98.

13.     The patent examiner subjected proposed claims 74-98 to a restriction requirement and deemed them non-elected. In response to that action, BIAX filed another application, as a divisional of the '691 application, in order to circumvent the restriction requirement. This was U.S. Patent Application Serial No. 08/914,077 (the "'077 application"). The claims proposed in the '077 application (also numbered 74-98) were identical to the corresponding claims in the '691 application.

14.     Patent Examiner William Treat rejected Claims 74-98 of the '077 Application as unpatentable. Among other things, he found that they were unpatentable over prior art including: (1) U.S. Patent No. 4,742,453, entitled "Pipeline-Controlled Information Processing System for Generating Updated Condition Code," issued to Shibuya ("Shibuya"); (2) H. Schorr, *Design Principles for a High-Performance System,"* Proc. of the Symposium on Computers and Automata, New York, NY, April 13-15, 1971, Polytechnic Press of the Polytechnic Institute of Brooklyn, NY ("Schorr"); and (3) P. Kogge, *"The Architecture of Pipelined Computers,"* Hemisphere Publishing Corp., 1981 ("Kogge"). BIAX was therefore fully aware of the Shibuya and Kogge references and their materiality. Despite repeated efforts by the applicant to convince

Examiner Treat that proposed Claims 74-98 were patentable, Examiner Treat made his rejection final on May 5, 1999, concluding that the "[a]pplicant's [latest] arguments . . . have been fully considered but they are not persuasive." BIAX was therefore fully aware of the Shibuya and Kogge references and their materiality.

15.     On or about September 17, 1999, BIAX succeeded in overturning the restriction requirement on the proposed claims 74-98 of the '691 application. At this point in time, the PTO assigned a different patent examiner, Examiner Meng-Ai An, to examine all of the claims proposed in the '691 application on their merits, including claims 74-98. BIAX failed to disclose to Examiner An that proposed claims 74-98 of the '691 application were identical to proposed claims 74-98 of the '077 application which Examiner Treat rejected as unpatentable. Examiner An was not aware of the rejection by Examiner Treat of the claims in the '077 application and, on information and belief, BIAX intentionally failed to disclose that information to her. To remove Examiner Treat from the picture, BIAX abandoned the '077 application, effectively terminating Examiner Treat's involvement.

16.     Not only did BIAX fail to tell Examiner An that the claims had been rejected as unpatentable in a co-pending application, but BIAX compounded the omission by failing to disclose to Examiner An the Shibuya and Kogge references which Examiner Treat had relied upon. Upon information and belief, BIAX failed to disclose the history of the '077 application and prior art in order to deceive or mislead the PTO. BIAX's lead patent attorney was the attorney of record for both the '077 and '691 applications and had full knowledge of Examiner Treat's rejection of the claims.

17.     BIAX failed to disclose additional prior art to Examiner An in connection with the prosecution of the '313 patent. Upon information and belief, during the prosecution of the

'691 application, BIAX was aware of the existence of two IBM Technical Disclosure Bulletins authored by T.K.M. Agerwala. These Bulletins were entitled *"New Condition Code and Branch Architecture for High Performance Processors"* and *"Improved Condition Code and Branch Handling for Model 91-Like Implementation of the IBM System/370 Architecture,"* dated June 1982 (collectively, "Agerwala"). The Agerwala references anticipate and/or render obvious the claims of the patents in suit. BIAX did not disclose these material prior art references to either Examiner An or Examiner Treat.

18. A reasonable patent examiner would have considered prosecution the history of the '077 application, particularly the rejections, material to the patentability of the claims in the '313 patent. A reasonable patent examiner also would have considered the undisclosed prior art material to the patentability of the claims in the '313 patent. The undisclosed prior art was not cumulative of any other prior art of record in the prosecution of the '691 application. Upon information and belief, BIAX failed to disclose the aforementioned information to the examiner of the '691 application with an intent to deceive or mislead the Examiner, in direct contravention of the rules of the PTO and BIAX's duty to prosecute patent applications with candor, good faith, and honesty.

19. Furthermore, some or all of the patents-in-suit are unenforceable due to BIAX's inequitable conduct in affirmatively misrepresenting and/or failing to disclose the addition of new matter during the prosecution of U.S. Patent Application Serial No. 06/794,221 (the "'221 application"), which issued into the '755 patent. Upon information and belief, such affirmative misrepresentations and/or failures of disclosure were made with an intent to deceive or mislead the PTO.

19

20.     During the prosecution of the original patent application of the patents-in-suit, BIAX amended the original disclosure through the transmittal of a substitute specification ("Substitute Specification").  BIAX transmitted the Substitute Specification to the PTO on or about June 13, 1988, over two-and-a-half years after the original filing of the '221 application, but before receiving a notice of allowance. The transmittal of the Substitution Specification coincided with the hiring of new lead patent prosecution attorney, Gary A. Walpert.  BIAX stated that the Substitute Specification was made to correct typographical errors and delete a description of the prior art which was otherwise of record.  BIAX further stated that "certain obvious errors, which are clear from a reading and understanding of the application as filed, have been corrected to avoid the necessity of a later reader having to perform the same ordinary corrective functions and to provide thereby a clearer and more accurate description of the invention."  BIAX stated that "[n]o new matter has been added."

21.     In response to an office action dated September 22, 1988, Mr. Walpert filed a declaration under 37 C.F.R. §1.125  attesting that "no new matter has been added to the application by the filing of or in the substitute specification."  He also asserted that the "changes, as noted in my previously filed paper, relate to the deletion of the section on prior art, the correction of a large number of typographical errors, as well as some inconsistencies which were apparent to me upon a normal reading of the application."  On or about February 2, 1989, the PTO issued a notice of allowability and the notice of allowance of the claims of the '755 patent.

22.     Contrary to BIAX's representations, the Substitute Specification added new matter to the '221 application.  For example, the adjective "identical" was systematically removed from the term "identical processor elements" or the term "identical processor elements" was modified by the addition of phraseology suggesting it was merely a description of a particular

embodiment.  BIAX's representations that the Substitute Specification did not add new matter and was made merely to correct typographical errors were false and intentionally misleading. The '755, '945, '628, and '313 patents all issued on the improper Substitute Specification.

23.    Additionally, in prosecuting U.S. Patent Application Serial No. 07/372,247 (the "'247 application"), which issued into the '945 patent, BIAX changed the drawing in Figure 21 without telling the PTO it was doing so.  The '247 application, a divisional application of the '221 application, was filed on June 26, 1989 shortly after BIAX received the notice of allowance of the '755 patent.  In filing the '247 application, BIAX represented to the PTO that it was based on the '221 application without change.  That was not true.  BIAX changed Figure 21 by adding lines 2180 and 2182.  These changes added new matter to the original parent application. BIAX's representations to the contrary were false and intentionally deceptive and misleading. BIAX also submitted the amended drawing Figure 21 in connection with the prosecution of the '313 patent, making similar misrepresentations.  Upon information and belief, these misrepresentations were made with an intent to deceive or mislead the PTO.

24.    BIAX also failed to disclose material prior art in connection with the prosecution of the '037 patent.  Upon information and belief, during prosecution of U.S. Patent Application Serial No. 08/480,841 (the "'841 application"), which issued into the '037 patent, BIAX was aware of the existence of an article written by Honesty C. Young and James R. Goodman and published in October 1984, entitled "A Simulation Study of Architectural Data Queues and Prepare-to-Branch Instruction.  ("Young and Goodman").  Upon information and belief, the Young and Goodman reference anticipates and/or renders obvious the claims of the '037 patent in suit.  BIAX did not disclose this material prior art reference during prosecution of the '841 application.

US_WEST:260068465.3
5545-90 USH/USH

25.    The Young and Goodman reference is not cumulative of any other prior art of record in the prosecution of the '841 application.  Upon information and belief, Mr. Walpert knew that he was under a duty to disclose the Young and Goodman reference to the examiner to allow the examiner to determine patentability of the allowed claims in view of the Young and Goodman reference and the other art of record.  Upon information and belief, BIAX failed to disclose the aforementioned information to the examiner.

26.    BIAX's conduct in connection with the prosecution of the '755, '945, '628, '037 and '313 patents establishes a pattern of conduct in failing to disclose material information  relevant to the patent applications, with an intent to deceive or mislead the PTO, in direct contravention of the rules of the PTO and BIAX's duty to prosecute patent applications with candor, good faith, and honesty.


## JURY DEMAND

Intel requests a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant Intel prays for relief as follows:

A.       That the Court enter judgment in favor of Intel, and against plaintiff BIAX;

B.       That the Court enter declaratory judgment that the patents-in-suit are not infringed by Intel;

C.       That the Court enter declaratory judgment that the patents-in-suit are invalid;

D.       That the Court enter declaratory judgment that the patents-in-suit are unenforceable;

E.       That BIAX take nothing by its Second Amended Complaint against Intel;

22

F.      That the Court deny any and all of plaintiff BIAX's requests for injunctive relief;

G.      That the Court deny any and all of plaintiff BIAX's requests for equitable relief;

H.      That the Court dismiss BIAX's Second Amended Complaint in its entirety, with prejudice;

I.      That the Court find this case exceptional under 35 U.S.C. § 285, and award Intel its costs and fees in this action, including reasonable attorneys' fees and pre-judgment interest thereon; and,

J.      That the Court grant Intel such other and further relief as it deems just and proper.

US_WEST:260068465.3
5545-90 USH/USH

Dated:  August 17, 2006                    Respectfully submitted,


                                           /s/ Eric H. Findlay
                                           Eric H. Findlay
                                           Ramey & Flock PC
                                           100 E. Ferguson, Suite 500
                                           Tyler, TX 75702-0629
                                           Tel. (903) 510-5213


                                           Harry Lee Gillam, Jr., *Attorney In Charge*
                                           Gillam & Smith LLP
                                           110 S. Bolivar, Suite 204
                                           Marshall, TX 75670
                                           Tel. (903) 934-8450


OF COUNSEL:

Chris R. Ottenweller
G. Hopkins Guy III
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
Tel. (650) 614-7400

Lisa C. Ward
Orrick, Herrington & Sutcliffe LLP
4 Park Plaza
Irvine, CA 92614-2558
Tel. (949) 567-6700

Robert M. Isackson
Alex V. Chachkes
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103-0001
Tel. (212) 506-5000


                                           *Attorneys for Intel Corporation*

US_WEST:260068465.3
5545-90 USH/USH

## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of August, 2006, a true and correct copy of the foregoing instrument was served upon all parties via electronic mail.

 /s/ Eric H. Findlay

ERIC H. FINDLAY

US_WEST:260068465.3
5545-90 USH/USH