**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| BIAX CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 02-05CV-184-TJW |
| | § | |
| INTEL CORPORATION | § | |
| | § | JURY TRIAL DEMANDED |
| and | § | |
| | § | |
| ANALOG DEVICES, INC. | § | |
| | § | |
| Defendants. | § | |

**ANSWER TO SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS
OF ANALOG DEVICES, INC.**

Analog Devices, Inc. ("Analog") answers the allegations of the Second Amended Complaint for Patent Infringement (the "Complaint") and asserts counterclaims as follows:

**PARTIES**

1.    Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint.

2.    Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint.

3.    Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint.

4.    Analog admits the allegations in paragraph 4 of the Complaint.

5.    Analog denies the allegations in paragraph 5 of the complaint.

## JURISDICTION AND VENUE

6.      No answer is required to the allegations contained in paragraph 6 of the Complaint, which merely state conclusions of law.

7.      No answer is required to the allegations contained in paragraph 7 of the Complaint, which merely state conclusions of law.

8.      No answer is required to the allegations contained in paragraph 8 of the Complaint, which merely state conclusions of law.

9.      No answer is required to the allegations contained in paragraph 9 of the Complaint, which merely state conclusions of law.

10.     No answer is required to the allegations contained in paragraph 10 of the Complaint, which merely state conclusions of law.

## COUNT ONE

11.     Analog incorporates its responses to paragraphs 1-10 of the Complaint as if fully set forth herein.

12.     Analog admits that United States Patent No. 4,847,755, entitled "Parallel Processing Method and Apparatus for Increasing Processing Throughout By Parallel Processing Low Level Instructions Having Natural Concurrencies" (the "'755 Patent") was issued by the United States Patent and Trademark Office on July 11, 1989.  Analog further admits that a copy of the '755 Patent is attached to the Complaint as Exhibit 1.  Analog denies that the '755 Patent was duly and legally issued.  Analog is without knowledge or information sufficient to form a belief as to the truth of the allegation that the '755 patent was duly and legally assigned to BIAX.

13.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint.

14.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint.

15.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint.

16.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint.

17.     Analog denies the allegations contained in paragraph 17 of the Complaint.

18.     Analog denies the allegations contained in paragraph 18 of the Complaint.

19.     Analog denies the allegations contained in paragraph 19 of the Complaint.

## COUNT TWO

20.     Analog incorporates its responses to paragraphs 1-10 of the Complaint as if fully set forth herein.

21.     Analog admits that United States Patent No. 5,021,945, entitled "Parallel Processor System for Processing Natural Occurrencies and Method Therefor" (the "'945 Patent") was issued by the United States Patent and Trademark Office on June 4, 1991. Analog further admits that a copy of the '945 Patent is attached to the Complaint as Exhibit 2. Analog denies that the '945 Patent was duly and legally issued. Analog is without knowledge or information sufficient to form a belief as to the truth of the allegation that the '945 patent was duly and legally assigned to BIAX.

22.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

23.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint.

25.     Analog denies the allegations contained in paragraph 25 of the Complaint.

26.     Analog denies the allegations contained in paragraph 26 of the Complaint.

27.     Analog denies the allegations contained in paragraph 26 of the Complaint.

### COUNT THREE

28.     Analog incorporates its responses to paragraphs 1-10 of the Complaint as if fully set forth herein.

29.     Analog admits that United States Patent No. 5,517,628, entitled "Computer With Instructions that Use an Address Field to Select Among Multiple Condition Code Registers" (the "'628 Patent") was issued by the United States Patent and Trademark Office on June 6, 1996. Analog further admits that a copy of the '628 Patent is attached to the Complaint as Exhibit 3. Analog denies that the '628 Patent was duly and legally issued.  Analog is without knowledge or information sufficient to form a belief as to the truth of the allegation that the '628 patent was duly and legally assigned to BIAX.

30.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint.

31.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the Complaint.

32.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the Complaint.

33.     Analog denies the allegations contained in paragraph 33 of the Complaint.

34.     Analog denies the allegations contained in paragraph 34 of the Complaint.

35.     Analog denies the allegations contained in paragraph 35 of the Complaint.

## COUNT FOUR

36.     Analog incorporates its responses to paragraphs 1-10 of the Complaint as if fully set forth herein.

37.     Analog admits that United States Patent No. 6,253,313 , entitled "Parallel Processor System for Processing Natural Concurrencies and Method Therefor" (the "'313 Patent") was issued by the United States Patent and Trademark Office on June 26, 2001  Analog further admits that a copy of the '313 Patent is attached to the Complaint as Exhibit 4.  Analog denies that the '313 Patent was duly and legally issued.  Analog is without knowledge or information sufficient to form a belief as to the truth of the allegation that the '313 patent was duly and legally assigned to BIAX.

38.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint.

39.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Complaint.

40.     Analog is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint.

41.     Analog denies the allegations contained in paragraph 41 of the Complaint.

42.     Analog denies the allegations contained in paragraph 42 of the Complaint.

43.     Analog denies the allegations contained in paragraph 43 of the Complaint.

## COUNT FIVE

44.     Analog incorporates its responses to paragraphs 1, 4-7, and 9-10 of the Complaint as if fully set forth herein.

45.     Analog admits that United States Patent No. 5,765,037 , entitled "System for Executing Instructions With Delayed Firing Times" (the "'037 Patent") was issued by the United States Patent and Trademark Office on June 9, 1998. Analog further admits that a copy of the '037 Patent is attached to the Complaint as Exhibit 5. Analog denies that the '037 Patent was duly and legally issued. Analog is without knowledge or information sufficient to form a belief as to the truth of the allegation that the '037 patent was duly and legally assigned to BIAX.

46.     Analog denies the allegations contained in paragraph 46 of the Complaint.

47.     Analog denies the allegations contained in paragraph 47 of the Complaint.

48.     Analog denies the allegations contained in paragraph 48 of the Complaint.

## AFFIRMATIVE DEFENSES

49.     BIAX Corporation ("BIAX") is not entitled to any relief against Analog because Analog is not infringing and has not infringed any of the claims of the '755, '945, '628, '313, or 037 patents (collectively, the "BIAX Patents").

50.     One or more of the claims of the BIAX Patents are invalid under one or more sections of Title 35 of the U.S. Code, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

51.     One or more of the BIAX Patents are unenforceable against Analog because of estoppel, laches, inequitable conduct, or other applicable equitable doctrines. Additionally, some or all of the patents in suit are unenforceable because BIAX acted inequitably in prosecuting them before the United States Patent and Trademark Office ("PTO"). The acts, omissions, and misrepresentations constituting inequitable conduct included BIAX's failure to disclose material prior art and material information in connection with at least the prosecution of U.S. Patent Application Serial No. 08/480,691 (the "'691 application"), which issued into the '313 patent, and U.S. Patent Application Serial No. 08/480,841 (the '841 application), which issued into the

'037 patent, in violation of the applicant's duty to prosecute patent applications in the PTO with candor, good faith, and honesty. 37 C.F.R. 1.56. Upon information and belief, such failure of disclosure resulted from an intent to deceive or mislead the PTO.

52.     On June 8, 1995, the GATT Uruguay Round Agreements Act ("URAA") became effective, limiting patents issuing from all applications filed on that date and thereafter to no longer than 20-year terms calculated from the filing date of the earliest-filed application from which such patents take priority. On June 7, 1995, the day before the URAA became effective, BIAX filed multiple divisional applications of then-pending U.S. Patent Application Serial No. 08/254,687, including the '691 and '841 applications, without immediately proposing any new claims for examination.

53.     The filing of the '691 and '841 applications before the URAA effective date allowed BIAX to reserve patent applications benefiting from a pre-URAA filing date, for years before BIAX even knew what proposed claims it wanted to prosecute in those applications. Indeed, it was not until two years later, on or about May 27, 1997, that BIAX first submitted new proposed claims for examination in the '691 application. BIAX's newly proposed claims of the '691 application were numbered 74-98.

54.     In the '691 application, the examiner subjected proposed claims 74-98 to a restriction requirement and deemed them non-elected. In response to that action, BIAX filed another application, as a divisional of the '691 application, in order to circumvent the restriction requirement. This was U.S. Patent Application Serial No. 08/914,077 (the "'077 application"). The claims proposed in the '077 application (also numbered 74-98) were identical to the corresponding claims in the '691 application.

55.     Patent Examiner William Treat rejected Claims 74-98 of the '077 Application as unpatentable. Among other things, he found that they were unpatentable over prior art including: (1) U.S. Patent No. 4,742,453, entitled "Pipeline-Controlled Information Processing System for Generating Updated Condition Code," issued to Shibuya ("Shibuya"); (2) H. Schorr, "Design Principles for a High-Performance System," Proc. of the Symposium on Computers and Automata, New York, NY, April 13-15, 1971, Polytechnic Press of the Polytechnic Institute of Brooklyn, NY ("Schorr"); and (3) P. Kogge, "The Architecture of Pipelined Computers," Hemisphere Publishing Corp., 1981 ("Kogge"). BIAX was therefore fully aware of the Shibuya and Kogge references and their materiality. Despite repeated efforts by the applicant to convince Examiner Treat that proposed Claims 74-98 were patentable, Examiner Treat made his rejection final on May 5, 1999, concluding that the "[a]pplicant's [latest] arguments . . . have been fully considered but they are not persuasive." BIAX was therefore fully aware of the Shibuya and Kogge references and their materiality.

56.     On or about September 17, 1999, BIAX succeeded in overturning the restriction requirement on the proposed claims 74-98 of the '691 application. At this point in time, the PTO assigned a different patent examiner, Examiner Meng-Ai An, to examine all of the claims proposed in the '691 application on their merits, including claims 74-98. BIAX failed to disclose to Examiner An that proposed claims 74-98 of the '691 application were identical to proposed claims 74-98 of the '077 application that Examiner Treat had rejected as unpatentable. Examiner An was not aware of the rejection by Examiner Treat of the claims in the '077 application and, on information and belief, BIAX intentionally failed to disclose that information to her. To remove Examiner Treat from the picture, BIAX abandoned the '077 application, effectively terminating Examiner Treat's involvement.

57.     Not only did BIAX fail to tell Examiner An that the claims had been rejected as unpatentable in a co-pending application, but BIAX compounded the omission by failing to disclose to Examiner An the Shibuya and Kogge references which Examiner Treat had relied upon. Upon information and belief, BIAX failed to disclose the history of the '077 application and prior art in order to deceive or mislead the Patent Office. BIAX's lead patent attorney was the attorney of record for both the '077 and '691 applications and had full knowledge of Examiner Treat's rejection of the claims.

58.     BIAX failed to disclose additional prior art to Examiner An in connection with the prosecution of the '313 patent. Upon information and belief, during the prosecution of the '691 application, and at least as early at August 1999, BIAX was aware of the existence of IBM Technical Disclosure Bulletins authored by T.K.M. Agerwala. These Bulletins were entitled "New Condition Code and Branch Architecture for High Performance Processors" and "Improved Condition Code and Branch Handling for Model 91-Like Implementation of the IBM System/370 Architecture," dated June 1982 (collectively, "Agerwala"), which is over three years before the earliest possible priority date for any of the patents in suit. The Agerwala references anticipate and/or render obvious the claims of the patents in suit. BIAX did not disclose these material prior art references to either Examiner An or Examiner Treat.

59.     A reasonable patent examiner would have considered prosecution the history of the '077 application, particularly the rejections, material to the patentability of the claims in the '313 patent. A reasonable patent examiner also would have considered the undisclosed prior art material to the patentability of the claims in the '313 patent. The undisclosed prior art was not cumulative of any other prior art of record in the prosecution of the '691 application. Upon information and belief, BIAX and its attorneys failed to disclose the aforementioned information

to the examiner of the '691 application with an intent to deceive or mislead the examiner, in direct contravention of the rules of the PTO and the duty of BIAX and its attorneys to prosecute patent applications with candor, good faith, and honesty.

60.     In prosecuting U.S. Patent Application Serial No. 08/480,841 (the '841 application), which issued into the '037 patent, on information and belief, BIAX and its attorneys deliberately withheld material facts from the patent examiner, with the intent to deceive the examiner.  In particular, and based on evidence now available to Analog, the technical consultant on whom BIAX heavily relied during prosecution of the '841 application advised BIAX and its attorneys that an article published in 1984 by H.C. Young and J.R. Goodman, entitled "A Simulation Study of Architectural Data Queues and Prepare-to-Branch Instruction" ("Young and Goodman"), was relevant to the claims being prosecuted in the '841 application.  In fact, on information and belief, Young and Goodman is highly material because it anticipates and/or renders obvious the claims of the '037 patent.  BIAX and its attorneys did not to disclose Young and Goodman to the examiner.  Their intentional failure to disclose highly material prior art of which they clearly aware rises to the level of inequitable conduct and this inequitable conduct renders the '037 patent unenforceable.

61.     A reasonable patent examiner would have considered the undisclosed prior art material to the patentability of the claims in the '037 patent.  The undisclosed prior art was not cumulative of any other prior art of record in the prosecution of the '841 application.  Upon information and belief, BIAX and its attorneys failed to disclose the aforementioned information to the examiner of the '841 application with an intent to deceive or mislead the examiner, in direct contravention of the rules of the PTO and the duty of BIAX and its attorneys to prosecute patent applications with candor, good faith, and honesty.

62.     Moreover, upon information and belief, BIAX and its representatives engaged in inequitable conduct before the PTO by pursuing claims in the '841 application that they did not believe were patentable. For instance, when claims of an earlier related application were rejected by the PTO, the BIAX attorney prosecuting that application enlisted the aid of a patent agent, who then expressed strong concerns about the patentability of such claims. The particular claims that the BIAX patent agent considered unpatentable eventually led to claims 1-12 of the '037 patent, the claims asserted against Analog. Upon information and belief, it appears that at one point, BIAX considered canceling these claims.

63.     Furthermore, some or all of the patents-in-suit are unenforceable due to BIAX's inequitable conduct in affirmatively misrepresenting and/or failing to disclose the addition of new matter during the prosecution of U.S. Patent Application Serial No. 06/794,221 (the "'221 application"), which issued into the '755 patent. Upon information and belief, such affirmative misrepresentations and/or failures of disclosure were made with an intent to deceive or mislead the PTO.

64.     During the prosecution of the original patent application of the patents-in-suit, BIAX amended the original disclosure through the transmittal of a substitute specification ("Substitute Specification"). BIAX transmitted the Substitute Specification to the PTO on or about June 13, 1988, over two-and-a-half years after the original filing of the '221 application, but before receiving a notice of allowance. The transmittal of the Substitution Specification coincided with the hiring of new lead patent prosecution attorney, Gary A. Walpert. BIAX stated that the Substitute Specification was made to correct typographical errors and delete a description of the prior art which was otherwise of record. BIAX further stated that "certain obvious errors, which are clear from a reading and understanding of the application as filed, have

been corrected to avoid the necessity of a later reader having to perform the same ordinary corrective functions and to provide thereby a clearer and more accurate description of the invention." BIAX stated that "[n]o new matter has been added."

65.     In response to an office action dated September 22, 1988, Mr. Walpert filed a declaration under 37 C.F.R. §1.125 attesting that "no new matter has been added to the application by the filing of or in the substitute specification." He also asserted that the "changes, as noted in my previously filed paper, relate to the deletion of the section on prior art, the correction of a large number of typographical errors, as well as some inconsistencies which were apparent to me upon a normal reading of the application." On or about February 2, 1989, the PTO issued a notice of allowability and the notice of allowance of the claims of the '755 patent.

67.     Contrary to BIAX's representations, the Substitute Specification added new matter to the '221 application.   Just to cite one example, the adjective "identical" was systematically removed from the term "identical processor elements" or the term "identical processor elements" was modified by the addition of phraseology suggesting it was merely a description of a particular embodiment. BIAX's representations that the Substitute Specification did not add new matter and was made merely to correct typographical errors were false and intentionally misleading.  The '755, '945, '628, and '313 patents all issued on the improper Substitute Specification.

68.     Additionally, in prosecuting U.S. Patent Application Serial No. 07/372,247 (the "'247 application"), which issued into the '945 patent, BIAX changed the drawing in Figure 21 without telling the PTO it was doing so.  The '247 application, a divisional application of the '221 application, was filed on June 26, 1989 shortly after BIAX received the notice of allowance of the '755 patent. In filing the '247 application, BIAX represented to the PTO that it was based

on the '221 application without change. That was not true. BIAX changed Figure 21 by adding lines 2180 and 2182. These changes added new matter to the original parent application. BIAX's representations to the contrary were false and intentionally deceptive and misleading. BIAX also submitted the amended drawing Figure 21 in connection with the prosecution of the '313 patent, making similar misrepresentations. Upon information and belief, these misrepresentations were made with an intent to deceive or mislead the PTO.

69.     BIAX repeated these false representations concerning the substitute specification in filings with the PTO in applications related to prosecution of the '037 patent.

70.     BIAX's conduct in connection with the prosecution of the '755, '945, '628, '037 and '313 patents establishes a pattern of conduct in failing to disclose material information relevant to the patent applications, with an intent to deceive or mislead the PTO, in direct contravention of the rules of the PTO and BIAX's duty to prosecute patent applications with candor, good faith, and honesty.

## SECOND AMENDED COUNTERCLAIMS OF ANALOG DEVICES, INC.

Now acting as Counter-Plaintiff, Analog Devices, Inc. alleges as follows for its counterclaims against BIAX Corp. as Counter-Defendant. For the avoidance of any confusion, the counterclaims herein are meant to supersede the counterclaims filed by Analog in this action on November 21, 2005.

## PARTIES

1.     Analog Devices, Inc. ("Analog") is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business located at One Technology Way, Norwood, Massachusetts 02062.

2.      On information and belief, BIAX Corporation ("BIAX") is a corporation organized under the laws of the State of Colorado with a principal place of business located at 2452 Briarwood Drive, Boulder, Colorado 80305.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

4.      BIAX is subject to personal jurisdiction in this District.

5.      Venue for this action is proper in this District. 28 U.S.C. §§ 1391 and 1400(b).

## FACTS

6.      BIAX claims to be the owner of all rights, title and interest in and to the '755, '945, '628, '313, and '037 patents (collectively, the "BIAX Patents").

7.      BIAX has accused Analog of infringement of the BIAX Patents.

8.      BIAX's accusations give rise to a case or actual controversy within the jurisdiction of this Court, pursuant to 28 U.S.C. §§ 2201 and 2202.

## COUNT ONE
(Non-Infringement of the BIAX Patents)

9.      Analog repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

10.     Analog is not infringing and has not infringed, directly, by inducement or contributorily, on any claim of the BIAX Patents.

11.     Accordingly, Analog is entitled to a declaratory judgment that it does not infringe on any claim of the BIAX Patents.

## COUNT TWO
(Invalidity of the BIAX Patents)

12.     Analog repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

13.     One or more claims of the BIAX Patents are invalid under one or more sections of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112.

14.     Accordingly, Analog is entitled to a declaratory judgment that one or more claims of the BIAX Patents are invalid.

## COUNT THREE
(Unenforceability of the BIAX Patents)

15.     Analog repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

16.     One or more of the BIAX Patents are unenforceable against Analog because of estoppel, laches, or other applicable equitable doctrines.

17.     Additionally, some or all of the patents in suit are unenforceable because BIAX acted inequitably in prosecuting them before the United States Patent and Trademark Office ("PTO"). The acts, omissions, and misrepresentations constituting inequitable conduct included BIAX's failure to disclose material prior art and material information in connection with at least the prosecution of U.S. Patent Application Serial No. 08/480,691 (the "'691 application"), which issued into the '313 patent, and U.S. Patent Application Serial No. 08/480,841 (the '841 application), which issued into the '037 patent, in violation of the applicant's duty to prosecute patent applications in the PTO with candor, good faith, and honesty. 37 C.F.R. 1.56.  Upon information and belief, such failure of disclosure resulted from an intent to deceive or mislead the PTO.

18.     On June 8, 1995, the GATT Uruguay Round Agreements Act ("URAA") became effective, limiting patents issuing from all applications filed on that date and thereafter to no longer than 20-year terms calculated from the filing date of the earliest-filed application from which such patents take priority.  On June 7, 1995, the day before the URAA became effective, BIAX filed multiple divisional applications of then-pending U.S. Patent Application Serial No. 08/254,687, including the '691 and '841 applications, without immediately proposing any new claims for examination.

19.     The filing of the '691 and '841 applications before the URAA effective date allowed BIAX to reserve patent applications benefiting from a pre-URAA filing date, for years before BIAX even knew what proposed claims it wanted to prosecute in those applications. Indeed, it was not until two years later, on or about May 27, 1997, that BIAX first submitted new proposed claims for examination in the '691 application.  BIAX's newly proposed claims of the '691 application were numbered 74-98.

20.     In the '691 application, the examiner subjected proposed claims 74-98 to a restriction requirement and deemed them non-elected.  In response to that action, BIAX filed another application, as a divisional of the '691 application, in order to circumvent the restriction requirement.  This was U.S. Patent Application Serial No. 08/914,077 (the "'077 application"). The claims proposed in the '077 application (also numbered 74-98) were identical to the corresponding claims in the '691 application.

21.     Patent Examiner William Treat rejected Claims 74-98 of the '077 Application as unpatentable.  Among other things, he found that they were unpatentable over prior art including: (1) U.S. Patent No. 4,742,453, entitled "Pipeline-Controlled Information Processing System for Generating Updated Condition Code," issued to Shibuya ("Shibuya"); (2) H. Schorr, "Design

Principles for a High-Performance System," Proc. of the Symposium on Computers and Automata, New York, NY, April 13-15, 1971, Polytechnic Press of the Polytechnic Institute of Brooklyn, NY ("Schorr"); and (3) P. Kogge, "The Architecture of Pipelined Computers," Hemisphere Publishing Corp., 1981 ("Kogge"). BIAX was therefore fully aware of the Shibuya and Kogge references and their materiality. Despite repeated efforts by the applicant to convince Examiner Treat that proposed Claims 74-98 were patentable, Examiner Treat made his rejection final on May 5, 1999, concluding that the "[a]pplicant's [latest] arguments . . . have been fully considered but they are not persuasive." BIAX was therefore fully aware of the Shibuya and Kogge references and their materiality.

22.     On or about September 17, 1999, BIAX succeeded in overturning the restriction requirement on the proposed claims 74-98 of the '691 application. At this point in time, the PTO assigned a different patent examiner, Examiner Meng-Ai An, to examine all of the claims proposed in the '691 application on their merits, including claims 74-98. BIAX failed to disclose to Examiner An that proposed claims 74-98 of the '691 application were identical to proposed claims 74-98 of the '077 application that Examiner Treat had rejected as unpatentable. Examiner An was not aware of the rejection by Examiner Treat of the claims in the '077 application and, on information and belief, BIAX intentionally failed to disclose that information to her. To remove Examiner Treat from the picture, BIAX abandoned the '077 application, effectively terminating Examiner Treat's involvement.

23.     Not only did BIAX fail to tell Examiner An that the claims had been rejected as unpatentable in a co-pending application, but BIAX compounded the omission by failing to disclose to Examiner An the Shibuya and Kogge references which Examiner Treat had relied upon. Upon information and belief, BIAX failed to disclose the history of the '077 application

and prior art in order to deceive or mislead the Patent Office. BIAX's lead patent attorney was the attorney of record for both the '077 and '691 applications and had full knowledge of Examiner Treat's rejection of the claims.

24.     BIAX failed to disclose additional prior art to Examiner An in connection with the prosecution of the '313 patent. Upon information and belief, during the prosecution of the '691 application, and at least as early at August 1999, BIAX was aware of the existence of IBM Technical Disclosure Bulletins authored by T.K.M. Agerwala. These Bulletins were entitled "New Condition Code and Branch Architecture for High Performance Processors" and "Improved Condition Code and Branch Handling for Model 91-Like Implementation of the IBM System/370 Architecture," dated June 1982 (collectively, "Agerwala"), which is over three years before the earliest possible priority date for any of the patents in suit. The Agerwala references anticipate and/or render obvious the claims of the patents in suit. BIAX did not disclose these material prior art references to either Examiner An or Examiner Treat.

25.     A reasonable patent examiner would have considered prosecution the history of the '077 application, particularly the rejections, material to the patentability of the claims in the '313 patent. A reasonable patent examiner also would have considered the undisclosed prior art material to the patentability of the claims in the '313 patent. The undisclosed prior art was not cumulative of any other prior art of record in the prosecution of the '691 application. Upon information and belief, BIAX and its attorneys failed to disclose the aforementioned information to the examiner of the '691 application with an intent to deceive or mislead the examiner, in direct contravention of the rules of the PTO and the duty of BIAX and its attorneys to prosecute patent applications with candor, good faith, and honesty.

26.     In prosecuting U.S. Patent Application Serial No. 08/480,841 (the '841 application), which issued into the '037 patent, on information and belief, BIAX and its attorneys deliberately withheld material facts from the patent examiner, with the intent to deceive the examiner. In particular, and based on evidence now available to Analog, the technical consultant on whom BIAX heavily relied during prosecution of the '841 application advised BIAX and its attorneys that an article published in 1984 by H.C. Young and J.R. Goodman, entitled "A Simulation Study of Architectural Data Queues and Prepare-to-Branch Instruction" ("Young and Goodman"), was relevant to the claims being prosecuted in the '841 application. In fact, on information and belief, Young and Goodman is highly material because it anticipates and/or renders obvious the claims of the '037 patent. BIAX and its attorneys did not to disclose Young and Goodman to the examiner. Their intentional failure to disclose highly material prior art of which they clearly aware rises to the level of inequitable conduct and this inequitable conduct renders the '037 patent unenforceable.

27.     A reasonable patent examiner would have considered the undisclosed prior art material to the patentability of the claims in the '037 patent. The undisclosed prior art was not cumulative of any other prior art of record in the prosecution of the '841 application. Upon information and belief, BIAX and its attorneys failed to disclose the aforementioned information to the examiner of the '841 application with an intent to deceive or mislead the examiner, in direct contravention of the rules of the PTO and the duty of BIAX and its attorneys to prosecute patent applications with candor, good faith, and honesty.

28.     Moreover, upon information and belief, BIAX and its representatives engaged in inequitable conduct before the PTO by pursuing claims in the '841 application that they did not believe were patentable. For instance, when claims of an earlier related application were rejected

by the PTO, the BIAX attorney prosecuting that application enlisted the aid of a patent agent, who then expressed strong concerns about the patentability of such claims. The particular claims that the BIAX patent agent considered unpatentable eventually led to claims 1-12 of the '037 patent, the claims asserted against Analog. Upon information and belief, it appears that at one point, BIAX considered canceling these claims.

29.    Furthermore, some or all of the patents-in-suit are unenforceable due to BIAX's inequitable conduct in affirmatively misrepresenting and/or failing to disclose the addition of new matter during the prosecution of U.S. Patent Application Serial No. 06/794,221 (the "'221 application"), which issued into the '755 patent. Upon information and belief, such affirmative misrepresentations and/or failures of disclosure were made with an intent to deceive or mislead the PTO.

30.    During the prosecution of the original patent application of the patents-in-suit, BIAX amended the original disclosure through the transmittal of a substitute specification ("Substitute Specification"). BIAX transmitted the Substitute Specification to the PTO on or about June 13, 1988, over two-and-a-half years after the original filing of the '221 application, but before receiving a notice of allowance. The transmittal of the Substitution Specification coincided with the hiring of new lead patent prosecution attorney, Gary A. Walpert. BIAX stated that the Substitute Specification was made to correct typographical errors and delete a description of the prior art which was otherwise of record. BIAX further stated that "certain obvious errors, which are clear from a reading and understanding of the application as filed, have been corrected to avoid the necessity of a later reader having to perform the same ordinary corrective functions and to provide thereby a clearer and more accurate description of the invention." BIAX stated that "[n]o new matter has been added."

31.     In response to an office action dated September 22, 1988, Mr. Walpert filed a declaration under 37 C.F.R. §1.125 attesting that "no new matter has been added to the application by the filing of or in the substitute specification." He also asserted that the "changes, as noted in my previously filed paper, relate to the deletion of the section on prior art, the correction of a large number of typographical errors, as well as some inconsistencies which were apparent to me upon a normal reading of the application." On or about February 2, 1989, the PTO issued a notice of allowability and the notice of allowance of the claims of the '755 patent.

32.     Contrary to BIAX's representations, the Substitute Specification added new matter to the '221 application. Just to cite one example, the adjective "identical" was systematically removed from the term "identical processor elements" or the term "identical processor elements" was modified by the addition of phraseology suggesting it was merely a description of a particular embodiment. BIAX's representations that the Substitute Specification did not add new matter and was made merely to correct typographical errors were false and intentionally misleading. The '755, '945, '628, and '313 patents all issued on the improper Substitute Specification.

33.     Additionally, in prosecuting U.S. Patent Application Serial No. 07/372,247 (the "'247 application"), which issued into the '945 patent, BIAX changed the drawing in Figure 21 without telling the PTO it was doing so. The '247 application, a divisional application of the '221 application, was filed on June 26, 1989 shortly after BIAX received the notice of allowance of the '755 patent. In filing the '247 application, BIAX represented to the PTO that it was based on the '221 application without change. That was not true. BIAX changed Figure 21 by adding lines 2180 and 2182. These changes added new matter to the original parent application. BIAX's representations to the contrary were false and intentionally deceptive and misleading.

BIAX also submitted the amended drawing Figure 21 in connection with the prosecution of the '313 patent, making similar misrepresentations.   Upon information and belief, these misrepresentations were made with an intent to deceive or mislead the PTO.

34.     BIAX repeated these false representations in filings with the PTO in applications related to prosecution of the '037 patent.

35.     BIAX's conduct in connection with the prosecution of the '755, '945, '628, '037 and '313 patents establishes a pattern of conduct in failing to disclose material information relevant to the patent applications, with an intent to deceive or mislead the PTO, in direct contravention of the rules of the PTO and BIAX's duty to prosecute patent applications with candor, good faith, and honesty.

36.     Accordingly, Analog is entitled to a declaratory judgment that one or more of the BIAX Patents are unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Analog Devices, Inc. requests entry of judgment in its favor and against BIAX as follows:

A.     Adjudge that Analog has not infringed any of the BIAX Patents and/or that such patents are invalid and/or unenforceable, and enter a declaratory judgment to that effect;

B.     Enter an order finding that this is an exceptional case and awarding Analog its reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

C.     Award Analog such other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Analog Devices, Inc. demands a trial by jury on all issues so triable.

Respectfully submitted,

By: _David J. Beck_   *by BDD w/permission*

David J. Beck
Texas Bar No. 00000070
Beck, Redden & Secrest, L.L.P.
One Houston Center
1221 McKinney St., Suite 4500
Houston, TX. 77010
(713) 951-3700
(713) 951-3720 (Fax)
dbeck@brsfirm.com
**ATTORNEY-IN-CHARGE FOR DEFENDANT
ANALOG DEVICES, INC.**

Dated: August 17, 2006

*Of Counsel*:

B.D. Daniel
Jim Taylor
John Ben Blackburn
Beck, Redden & Secrest, L.L.P.
One Houston Center
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700
(713) 951-3720 (Fax)

Jennifer P. Ainsworth
Wilson, Sheehy, Knowles, Robertson & Cornelius
909 ESE Loop 323, Suite 400
Tyler, TX 75701
(903) 509-5000
(903) 509-5092 (Fax)
jainsworth@wilsonlawfirm.com

Steven M. Bauer
Jeremy P. Oczek
Proskauer Rose LLP
One International Place
Boston, MA 02210
(617) 526-9600
(617) 526-9899 (Fax)
sbauer@proskauer.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served in compliance with the Federal Rules of Civil Procedure via E-Mail on the 17th day of August, 2006 to:

Eric M. Albritton
Albritton Law Firm
PO Box 2649
Longview, Texas 75606
ema@emafirm.com

Barry W. Graham
E. Robert Yoches
Edward Naidich
Finnegan, Henderson, Farabow, Garrett, &
Dunner, LLP
901 New York Avenue, NW
Washington, D.C. 2001-4413
barry.graham@finnegan.com
bob.yoches@finnegan.com
ed.naidich@finnegan.com

Gil Gillam
Gillam & Smith, LLP
110 S. Bolivar, Suite 204
Marshall, Tx 75670
gil@gillamsmithlaw.com

Eric H. Findlay
Ramey & Flock, P.C.
100 E. Ferguson, Suite 500
Tyler, Tx. 75702
efindlay@rameyflock.com

Chris R. Ottenweller
G. Hopkins Guy III
Ulysses S.T. Hui
Brian VanderZanden
Orrick, Herrington, & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
cottenweller@orrick.com

Lisa Ward
Orrick, Herrington & Sutcliffe LLP
4 Park Place Plaza, Suite 1600
Irvine, CA 92614
lward@orrick.com

Alex Chachkes
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103-0001
achachkes@orrick.com

B.D. Daniel