*BIAX Corporation v. Intel*
Civil Action No. 2:05-cv-184-TJW

EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| BIAX CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| Counterclaim-Defendant | ) |
| | ) Civil Action No. 02-05CV-184-TJW |
| v. | ) |
| | ) |
| INTEL CORPORATION | ) |
| | ) |
| and | ) |
| | ) |
| ANALOG DEVICES, INC. | ) |
| | ) |
| Defendants, | ) |
| Counterclaim-Plaintiffs. | ) |

**BIAX CORPORATION'S SUR-REPLY IN SUPPORT OF ITS COMBINED OPPOSITION TO INTEL CORPORATION'S AND ANALOG DEVICES, INC.'S MOTIONS TO COMPEL PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD ON PRIVILEGE GROUNDS**

**I.     Introduction**

Intel and ADI ("Defendants") complain that BIAX has waived privilege by disclosing "over one hundred" documents they believe were privileged. Tellingly, however, Defendants neglect to identify in these documents any request for legal advice or analysis from the client or the provision of such advice or analysis to the client. Instead, Defendants base their argument that the documents were privileged solely on the facts that BIAX's former counsel had once claimed the documents as privileged and had asserted privilege in response to certain deposition questions not involving any of these documents. Neither argument justifies the relief Defendants seek because neither argument establishes that the produced documents contained privileged communications.

Defendants then inconsistently fault BIAX for claiming privilege over documents actually containing legal advice and analyses. (Intel Opening Br. 13) The end result is a confused and misguided effort by Defendants to ignore the principles of the attorney-client privilege, so they can gain unwarranted access to the mental impressions and legal analyses of BIAX's attorneys.

**II.    Argument**

Defendants continue to try to concoct a waiver out of BIAX's production of non-privileged documents. As BIAX's Opposition Brief explained, however, BIAX's production of non-privileged documents does not effect a waiver of the attorney-client privilege. (Opp. Br. 9 citing *Allen-Bradley Co., Inc. v. Autotech Corp.*, No. 86 C 8514, 1989 WL 134500, *1 (N.D. Ill. October 6, 1989).) Waiver only results from the intentional disclosure of privileged information. *Id*.

Defendants also seek to enlarge the scope of "subject matter" waiver to include any subject matter related to the general class of information in the waived documents. Defendants

1

suggest that this jurisdiction has adopted a particularly broad scope of waiver (Reply Br. 2-3), but the opposite is true. Courts in the Fifth Circuit have recognized that "[m]any courts make prudential distinctions between what has been revealed and what remains privileged." *Muncy v. City of Dallas*, No. 3:99-CV-2960-P, 2001 U.S. Dist. LEXIS 18675 (N.D. Tex. Nov. 13, 2001) (finding a limited waiver). Moreover, where the party asserting privilege does not rely on the disclosed information, "the scope of the waiver would be quite narrow." *Aspex Eyewear v. E'Lite Optik*, 53 Fed. R. Serv. 3d (Callaghan) 44, *13 (N.D. Tex. 2002).

BIAX has only waived privilege for two limited subject matter areas: one relating to an Intel product (i860) not involved in this litigation and another to a prior-art reference (Shibuya) contested in an earlier litigation. BIAX has disclosed no other privileged information, nor has it made any effort to rely upon the information in other produced documents. Accordingly, the subject matter BIAX waived should be limited to those areas.

**A.     Defendants Still Fail to Show any Basis for Widespread Waiver**

**1.     The Only Privileged Information BIAX Disclosed Relates to Shibuya reference and an Intel i860 Product, and BIAX has Produced all Documents Relating to Those Subjects.**

The only privileged documents relating to prior art that BIAX has produced relate only to the Shibuya reference. As BIAX's Opposition Brief explained, and as Defendants' brief all but ignores, the documents Defendants rely on for its claim of a broad waiver are not themselves privileged. (Opp. Br. 8-15.) Accordingly, producing these non-privileged documents cannot effect a waiver of privilege documents. *See Allen-Bradley Co., Inc.*, 1989 WL 134500.

Similarly, Defendants fail to show that BIAX produced privileged documents relating to any accused device other than the Intel i860. Any waiver would not extend beyond that product. Because BIAX has produced all privileged documents involving the Shibuya reference and the i860 product, there is no basis to order the production of any other documents.

### 2. Correction of a Mistaken Claim of Privilege Does Not Create Waiver

Rather than address any specific produced documents, Defendants argue that the produced documents are privileged merely because BIAX earlier claimed privilege over them, and producing them has "contradicted" BIAX's prior claims of privilege. (Reply Br. at 4-5.) Thus, Defendants would argue that by once claiming privilege over a document, a party can never change its mind without suffering widespread waiver, a position that would discourage any sort of compromise or later reassessment of privilege claims.

No law supports Defendants' curious argument, and the lack of authority is unsurprising. In this case, BIAX properly reviewed the claims of attorney-client privilege made in a previous litigation and rectified any mistaken designations. As BIAX's Opposition Brief explained, none of the documents Defendants cite to show a waiver is privileged. Indeed, that is precisely why BIAX withdrew its claim of privilege and produced the documents in question. Doing so does not result in a waiver. *See Allen-Bradley Co., Inc.,*, 1989 WL 134500 ("It would be harsh indeed to impose waiver where authority exists for a conclusion that a document is not privileged.).

### 3. BIAX's Proper Objections at Depositions Did Not Create a Waiver

Defendants also seek to rely upon objections former counsel made to deposition questions of BIAX consultants in a prior litigation as proof that BIAX considered all communications involving those consultants to be privileged. Defendants' analysis suffers at least two major flaws. First, BIAX's objections to the broad questions were proper since the questions could have elicited substantive legal, and privileged, communications. (*See* Reply Br. 5-6.) In *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999), a case Defendants cited, the Fifth Circuit found the failure to object under similar circumstances constituted a waiver. Accordingly, Defendants cannot fault BIAX for asserting privilege under such circumstances.

3

Second, even if the objections were improper, such objections, like the mistakes in privilege designations BIAX has corrected, do not constitute a waiver of rights over other privileged documents as explained in the previous section. And Defendants suffer no prejudice if this is the case because they can still pursue the questions the former opponents asked.

### 4. Documents with a Firm Letterhead Are Not Per Se Privileged.

The remaining disclosures Defendants cited as a basis for usurping BIAX's right to the attorney-client privilege cannot be considered privileged. (*See* Opp. Br. at 14.) As BIAX stated in its Opposition Brief, such documents contained information that "was neither communicated to the client nor does it reflect legal advice provided to the client by an attorney." (*Id*. at 11.) Contrary to Defendants' assertions, the mere fact that a communication bears a firm letterhead (Reply Br. 6) does not establish attorney-client privilege. "[T]he mere presence of a lawyer's name at the top or bottom of a document is *not* the bell that causes the dog named Privilege to salivate." *Nedlog Co. v. ARA Services, Inc.*, 131 F.R.D. 116, 117 (N.D. Ill. 1989).

### B. The Documents Defendants Argue Create a Waiver for All Infringement Opinions Are Not Privileged.

Defendants based their claim BIAX waived infringement opinions on documents that are not privileged. For example, to support its contention that BIAX disclosed "privileged" documents analyzing the infringement of all Intel devices, Defendants cite to three documents. (Reply Br. 7 citing Ex. 2, Nos. 28, 14 and 37.) Each document however, represents nothing more than a "to do list" with no legal advice. (*See id*.) Such lists are not privileged. *See Royal Surplus Lines Ins. Co. v. Sofamor Danek Group, Inc.*, 190 F.R.D. 505, 513 (W.D. Tenn. 1999) (holding that attorney client privilege did not apply to a "list of things … needed to [be done]").

C.  **BIAX's Disclosure of Documents to LRM and Deloitte Did Not Create a Waiver Because the Disclosures Contained no Privileged Documents.**

Defendant's distinction of *Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567 (E.D. Cal. 2002) misses the point of that case. In *Lectrolarm*, an insurer complained that the production of privileged information to a liability insurer for acquiring liability insurance "would have a chilling effect on cases where litigation and settlement is funded by insurance in that there can be no meaningful exchange of information with respect to the case strategy or settlement value if there is a concern that such information is subject to production to the opposing party." *Lectrolarm*, 212 F.R.D 567, 269. The Eastern District of California agreed, finding that "the threat of production of the [privileged] information at issue … creates a wedge between the insured and their insurance carrier which is not in the best interests of any of the parties in this or any other litigation." Citing the common interest between the parties, the district court refused to compel production of the privileged information.

Similarly, in *Atmel v. St. Paul Fire and Marine Ins. Co.*, 409 F.Supp.2d 1180, 1182 (N.D. Cal. 2005), disclosure of privileged information to a non-party agent hired to assist in acquiring liability insurance did not waive privilege. Rather, the court concluded that the agent "was present to further the interests of [the insured] and the disclosure [of privileged information] was reasonably necessary for the transfer of necessary information to the insurers." *Id*. at 1182. Accordingly, "[g]iven the relationship between [the insured and the agent], the attorney client privilege was not waived." *Id*.

Thus, contrary to the positions Defendants assert, which have no supporting legal authority, the law does not find a waiver from providing privileged documents to insurance carriers. And more importantly, Defendants have not shown that BIAX disclosed any such documents to its carriers.

5

### D. Response to Arguments from Page 13 Of Intel's Brief

#### 1. 1993-2000 Documents

Citing *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982) out of context, Defendants complain that BIAX has asserted an improper "blanket" claim of privilege with respect to each document in paragraph 31 of the Chachkes Declaration. In that case, however, El Paso refused to respond to a document request seeking potential tax-liability documents by claiming, without any particularity, that all such documents were privileged. *Id*. at 533. El Paso neither described the privileged documents nor prepared a privilege log.

BIAX, on the other hand, has generated a detailed privilege log describing each and every document containing privileged information. Indeed, BIAX has "specifically asserted [privilege] with respect to [each of the] particular documents," consistent with the very authority Defendants cited. *Id*. at 539 ("The privilege must be specifically asserted with respect to particular documents.") By providing a detailed privilege log, BIAX has afforded Defendants a full opportunity to "test[] the merits of the claim of privilege" in compliance with the prohibition against blanket assertions of privilege. *Id*. at 541. *See also Estate of J. Edgar Monroe v. Bottle Rock Power Corp.*, No. 03-civ-2682, 2004 U.S. Dist. LEXIS 5737, *36 (E.D. La. Apr. 2, 2004) (holding that the submission of a privilege log mooted a claim that a party had improperly made a blanket assertion of privilege).

#### 2. History of TDA Document

Though Defendants now acquiesce that the document entitled "History of TDA" falls within the attorney-work product, they continue to argue that BIAX should produce the "other documents being withheld by BIAX under claim of attorney-client privilege that contain nothing more than percipient facts." (Reply Br. 10.) Defendants, however, have not identified any such

6

documents, either in the opening brief (Intel Opening Br. at 13) or the reply brief (Reply Br. 10), making this request entirely meaningless.

**III.     Conclusion**

For the reasons set forth above, and in BIAX's Opposition Brief, this Court should deny both Intel's and ADI's motions, and conclude that BIAX need not produce any privileged documents.

September 5, 2006                                                Respectfully submitted,

_/s/ Eric M. Albritton_
Eric M. Albritton
Attorney-in-Charge
Texas State Bar No. 00790215
J. Scott Hacker
Texas State Bar No. 24027065
Albritton Law Firm
PO Box 2649
Longview, Texas 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397
ema@emafirm.com
jsh@emafirm.com

Case 2:05-cv-00184-TJW-CE Document 272 Filed 09/05/06 Page 9 of 11

OF COUNSEL:
Barry W. Graham
Washington DC Bar No. 291278
E. Robert Yoches
Washington DC Bar No. 342642
Griffith J. Price
Washington DC Bar No. 429585
Edward J. Naidich
Washington DC Bar No. 481649
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, D.C. 20001-4413
(202) 408-4000
barry.graham@finnegan.com
bob.yoches@finnegan.com
griff.price@finnegan.com
ed.naidich@finnegan.com

*Attorneys for BIAX Corporation*

8

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 5th day of September, 2006.

Eric. M. Albritton